NICOLAUS OPP, APPELLANT, v. FREDLIN W. SMITH ET AL., APPELLEES.

FILED MAY 15, 1914. No. 17,642.

1. **Appeal: ISSUES REVIEWABLE.** Issues tendered by the pleadings, but not determined by the district court, and not discussed in the briefs on appeal, will not be considered by this court.

2. **Adverse Possession.** Where a claimant to land by adverse possession resides upon land adjacent thereto, and it appears that the land in controversy was not inclosed, cultivated, or improved by the erection of buildings thereon or otherwise, and the possession and use

of the land claimed was in connection with other open and unoccupied lands many miles in extent and containing thousands of acres upon which the live stock of the claimant grazed at will, the live stock of others not being habitually excluded from the land claimed, such use and occupation does not constitute such adverse and exclusive possession as will ripen into a title by limitation.

APPEAL from the district court for Morrill county: RALPH W. HOBART, JUDGE. Reversed with directions.

G. J. Hunt, for appellant.

Williams & Williams and J. E. Philpott, contra.

FAWCETT, J.

Plaintiff, claiming to be the owner by patent from the United States government of the southwest quarter of section 1, township 20, range 51, in what was formerly Cheyenne but is now Morrill county, brought suit in the district court for the latter county to quiet his title as against a claim by defendant Taylor as grantee of the defendants Smith, and a further claim of title by adverse possession. From a judgment in favor of the defendant on his claim of title by adverse possession, plaintiff appeals.

The record shows that about May 1, 1899, one Blanche Willis, then betrothed to defendant F. W. Smith, at his instance made a homestead entry upon lands east of and adjoining the land in controversy. As soon as her entry was made, Smith built a dwelling-house thereon for himself and his fiancee. At that time Smith was engaged in the stock business; his cattle being on the south side of the river from Camp Clarke. About the time indicated, he says: "I brought my cattle over and my horses. Q. What did you do? A. I turned them loose right there and ranged them." On October 13, 1900, the land in controversy was purchased at private tax sale by defendants F. W., F. L. and Angelus Smith. September 28, 1903, the treasurer of Cheyenne county issued a tax deed to the purchasers at the tax sale. On March 17, 1904, defendant

96 Neb. 15

F. W. Smith and his wife, Blanche, conveyed the land to defendant Taylor, and on August 28, 1909, Angelus Smith, single, and F. L. Smith and F. W. Smith, with their respective wives, executed to Taylor a quitclaim deed therefor. The petition sets out numerous grounds upon which plaintiff claims that the tax sale and the tax deed issued thereunder were void, and alleges that defendants are claiming title thereunder, and that they are also claiming title by adverse possession, and prays that plaintiff's title may be quieted against the clouds thus cast thereon. Certain special appearances were filed by defendants, and upon their motion the original summons was quashed. An amended petition was filed, and alias summons issued and duly served. Defendants answered and the case proceeded to trial. The proceedings, under which the land was sold for taxes and the deed issued, were introduced in evidence, but the question of their validity was not considered and determined by the decree of the district court. It is stated in the abstract that considerable testimony was received bearing upon the proceedings leading up and subsequent to the tax sale, "but which, owing to the finding of the court below, become immaterial upon the review, except exhibit M, which is an affidavit of the defendant, F. W. Smith." The finding of the trial court, as shown by the decree entered, is as follows: "The court being fully advised in the premises, on consideration whereof the court finds for the defendant Alanson O. Taylor that he and his privies have been in the continuous, open, notorious and undisputed adverse possession of the lands described in said petition for ten years prior to the commencement of this action, and has a legal estate therein, and that his title thereto should be quieted in him as against the plaintiff and all those claiming under him." If the allegations in plaintiff's petition as to the proceedings leading up to the tax sale and the issuance of the tax deed are true, the tax sale and the deed are void, and defendants obtained no title thereunder. As both sides have ignored that question in their briefs, and argued the

case solely upon the question of adverse possession, we will pursue a like course.

The evidence shows that no buildings or improvements have ever been erected upon the land, and that no attempt was ever made to fence the same until Taylor obtained his deeds from his codefendants. The only improvement claimed to have been made by defendant F. W. Smith is that in December 1903, the year before he conveyed the land to Taylor, he began the excavation of a small irrigation ditch across the land. The evidence shows that the most he was ever able to irrigate by this ditch is about one acre. The record does not show that either F. L. or Angelus Smith ever attempted to exercise any control over the land, and the evidence as to F. W. Smith's possession shows that, while living upon the adjoining land with his wife, he ranged his cattle over this and other lands, some of which was owned by the government and some by individual owners. This range extended for many miles west and a number of miles north, and included thousands of acres of land. He says he claimed this land; but, if Mr. Opp, the owner of the fee, had driven by, he would not have suspected any such a claim by reason of anything that was apparent upon or surrounding the land. This claim of possession by Smith is one of numerous claims of like character in the open country in the western part of the state. The settlers are few and far between. They are engaged mostly in stock-raising. Their cattle range over large areas. By a sort of gentlemen's agreement each settler claims the special right to let his stock graze over a certain portion of the public domain, and, so far as it can be done without too much trouble on the part of his neighbors, his claim under this agreement is respected; but, notwithstanding the agreement, the evidence shows that the cattle do in fact graze over the entire section of country. It shows that such was the fact in the present case. Other people's cattle grazed upon the land in controversy, and Smith's cattle grazed upon tracts which they were supposed to be claiming. As said in *Lanning v. Musser,* 88 Neb. 418, such a possession "did not constitute

such adverse and exclusive possession as would ripen into a title by limitation." That Smith did not consider that he and his copurchasers at the tax sale were in possession of this land is evidenced by the affidavit he executed September 7, 1903, and which affidavit was made for the purpose of securing a deed under the tax sale referred to. In that affidavit he stated that when on June 28, 1902, they gave notice of the expiration of the time for redemption from the tax sale, "no person was in actual possession or occupancy of said land, and that Nicolaus Opp, the person in whose name the title appears of record, could not, upon diligent inquiry, be found in said county, and therefore personal service of the notice of expiration of time for redemption could not be made." Further comment is unnecessary. The district court erred in finding title in defendant Taylor by adverse possession, and in dismissing plaintiff's petition.

The judgment of the district court is therefore reversed and the cause remanded, with directions to determine the question of the validity of the tax deed, set out in the pleadings, and of the tax sale upon which such deed is based, and, if the same are found to be void, to ascertain the amount which plaintiff should be required to pay in order to redeem the lands in controversy, and to permit such redemption.

REVERSED.

LETTON, ROSE and HAMER, JJ., not sitting.