[No. 15805.  Department One.  November 23, 1920.]

GRAYS HARBOR COMMERCIAL COMPANY, *Appellant*, v. JOHN McCULLOCH *et al., Respondents*.[1]

ADVERSE POSSESSION (28)—COLOR OF TITLE—DEED FROM STATE. A deed of tide lands from the state constitutes, "claim and color of title" (though the state had no title) within the meaning of Rem. Code, § 788, relating to the adverse possession of land.

SAME (34)—PAYMENT OF TAXES. Where there has been double taxation by reason of the fact that the taxes were paid by both the true owner and the adverse claimant, the latter is not within Rem. Code, § 788, relating to the adverse possession of land by one who for seven years shall pay "all taxes legally assessed" on the land.

SAME (28)—COLOR OF TITLE—DEDUCIBLE FROM STATE. Rem. Code, § 786, relating to the adverse possession of land actually held for seven years by one having a connected title "deducible of record from the state or United States," does not require a valid title from the state, and confers title by adverse possession under a state deed for the required period.

SAME (27)—CLAIM OF RIGHT. Claim of right in good faith is supplied by the fact that one went into possession by virtue of a deed from the state, and maintained actual, uninterrupted, open,

[1]Reported in 193 Pac. 709.

notorious, hostile, and exclusive possession, notwithstanding that the deed was given by mistake and the state had no title to the land.

SAME (41)—EVIDENCE—SUFFICIENCY. Adverse, hostile possession of tide lands, deeded to a fisherman by the state, is shown where it appears that, although using the location for fishing under a fishing license, the grantee did everything with the property which it was susceptible of, under claim of right, driving piles and removing piles driven by others, and commencing actions against those who invaded his rights.

Appeal from a judgment of the superior court for Grays Harbor county, Sheeks, J., entered December 27, 1919, in favor of the defendants, dismissing an action to quiet title, tried to the court. Affirmed.

*Theo. B. Bruener,* for appellant.

*G. P. Fishburne,* for respondents.

MACKINTOSH, J.—In 1866, the United States patented lot 7, section 13, township 17, north, range 9 west, W. M., which is a fractional lot in Grays Harbor county bordering on the Chehalis river, a meandered and navigable stream. In 1911, the appellant acquired title to lot 7. The lot extended to the meander line of the Chehalis river, which, according to the official survey, lies below the line of ordinary high water and coincides with the inner harbor line as it was subsequently established by the state harbor line commission. Lot 7, according to the plat, contains 36 25/100 acres. In 1895, the state harbor line commission filed a plat of the Cosmopolis tide lands. Tract 20 of this plat lies between the ordinary high tide and the inner harbor line, which, as we have already stated, was coincident with the government meander line. In 1901, the respondent purchased from the state of Washington the tide lands described as tract 20. This action involves the title to this strip of property lying be-

tween the inner harbor line and the high water mark, it being prosecuted for the purpose of quieting the appellant's title. Prior to delinquency the appellant has paid all taxes assessed against lot 7, the assessment being carried on the rolls as lot 7, which is described as containing 36 25/100 acres. The respondent has paid all taxes assessed against tract 20, which has been carried on the assessment roll by that description without any reference to its area.

The respondent claims title to the property under both the ten and seven-year statutes of limitation. The record shows that the respondent is a fisherman and purchased this property for the purpose of using it in connection with his vocation. Evidence was introduced that, in each fishing season since the respondent purchased, he has used so much of the property as was necessary for his nets and fishing appliances; and has asserted his ownership on more than one occasion by driving off trespassers, suing some of them, and by the driving of piling and the destruction of piling driven by others. Some of these acts are in dispute, but it is conceded that, in addition to fishing upon some of the property with a side net for five months in each year, the respondent instituted two law suits against steam boat operators for running into and damaging his nets, in both of which actions he introduced in evidence his deed from the state; and that, in the year 1919, the respondent brought suit in the Federal court against the appellant to recover damages done by it to the respondent's fish net. Thereupon this action was started.

Section 788, Rem. Code, provides that:

"Every person in actual, open and notorious possession of lands, or tenements under claim and color of title, made in good faith, and who shall for seven successive years continue in possession and shall also

during said time pay all taxes legally assessed on such lands or tenements, shall be held and adjudged to be the legal owner of said lands or tenements, to the extent and according to the purport of his or her paper title. . . ."

Under this section it will be necessary for the respondent to have been in actual, open and notorious possession of the lands under claim and color of title made in good faith, and to have paid taxes "legally assessed" thereon for a period of seven years. There is no question that the deed from the state to the respondent was "claim and color of title" within the meaning of the statute, and the record discloses the respondent's good faith, and we may assume for the present that the evidence was sufficient to establish actual, open and notorious possession. But the respondent failed to meet the final requirement of the statute, to wit, the payment of taxes "legally assessed," for the reason that tract 20, at the time it was platted and sold by the state, was not property belonging to the state of Washington, and was in that respect illegally platted, and taxes levied upon that illegal plat cannot be said to be taxes "legally assessed." Here the actual owner of the property, made such by a deed from the Federal government, had during all of the time paid the taxes according to its description, to wit, lot 7. Where assessments such as this have been made and both parties have paid the taxes the situation may be considered as one of double taxation, and the payment of the taxes by the legal owner should place him in the position of having the superior equity, and the payment by the person claiming title by adverse possession should not be sufficient to bring him within the operation of § 788. *Northern Pac. R. Co. v. Littlejohn*, 198 Fed. 700. Consequently, the respondent cannot succeed under that section.

Parenthetically, it may be stated here that there is a small portion of tract 20 as platted to which the state had title and which is not here in dispute, and which the appellant concedes is the property of the respondent.

Section 786, Rem. Code, provides:

"All actions brought for the recovery of any lands, tenements or hereditaments of which any person may be possessed by actual, open and notorious possession for seven successive years, having a connected title in law or equity *deducible of record from this state or the United States,* or from any public officer, or other person authorized by the laws of this state to sell such land for the nonpayment of taxes, or from any sheriff, marshal or other person authorized to sell such land on execution or under any order, judgment or decree of any court of record, shall be brought within seven years next after possession being taken as aforesaid, but when the possessor shall acquire title after taking such possession, the limitation shall begin to run from the time of acquiring title."

It will be noticed that this section differs from § 788 in that the payment of taxes is not called for, and for claim and color of title is substituted a title "deducible of record from this state or the United States," and it would appear that, in order for the respondent to succeed, all that it is necessary for him to show is that he has been in the actual, open and notorious possession under such color of title for seven years. "Title deducible from this state or the United States" does not mean a valid title, for we have often held that such a title is not necessary, for otherwise the section would be practically meaningless, for, if a person had a valid title, there would be no necessity of protecting one who had been in possession for a given number of years.

In interpreting color of title we have said in numer-

ous cases that a void deed is color of title: *Ward v. Huggins,* 7 Wash. 617, 32 Pac. 740, 1015, 36 Pac. 285; *Hamilton v. Winter,* 50 Wash. 689, 97 Pac. 1084, 126 Am. St. 921; *Lara v. Sandell,* 52 Wash. 53, 100 Pac. 166; *Miller v. Simmons,* 67 Wash. 294, 121 Pac. 462.

In *Schlarb v. Castaing,* 50 Wash. 331, 97 Pac. 289, in considering that portion of section 786 which refers to title from a "person authorized," we said that it did not mean lawfully authorized, but that it meant authorized by decree or judgment fair upon its face, the court saying:

"To give it any other meaning would be to destroy the purposes of the act. If the authorization to be valid must have behind it a judgment or decree invulnerable to every form of assault, there would be very little need of the statute."

The same reasoning applies in considering the phrase "title deducible of record from this state," and we hold that the deed to the respondent from the state was such a title as was contemplated by § 786, and the respondent must succeed if he can show that his possession for seven years has been actual, open and notorious.

The ten-year statute, or § 156, Rem. Code, provides:

"The period prescribed in the preceding section for the commencement of actions shall be as follows: within ten years (1) Actions for the recovery of real property or for the recovery of possession thereof; and no action shall be maintained for such recovery unless it appear that the plaintiff, his ancestor, predecessor, or grantor, was seized or possessed of the premises in question within ten years before the commencement of the action."

In *Skansi v. Novak,* 84 Wash. 39, 146 Pac. 160, the court said:

"Possession, to be adverse, must be actual, and uninterrupted, open and notorious, hostile and exclusive,

and under a claim of right made in good faith.  To constitute title it must have continued for the entire statutory period.

" 'To constitute an adverse possession there must be not only an ouster of the real owner followed by an actual, notorious and continuous possession on the part of the claimant during the statutory period, but there must have existed an intention on his part for a like period, to claim in hostility to the title of the real owner.' *Port Townsend v. Lewis,* 34 Wash. 413. . . .

"Color of title is not an essential to adverse possession under the ten year statute, but a claim of right made in good faith is always an essential, where there is no color of title.  Mere naked possession is not sufficient. . . .

"While adverse possession may originate in a mistake it must be such a mistake as to lead to an unequivocal claim, either by acts or words, of a title or right to the land possessed.  Mere possession up to the mistaken line without any claim of right or ownership beyond the true line is insufficient to constitute adverse possession or to work a disseizen of the true owner. . . ."

See, also, *People's Savings Bank v. Bufford,* 90 Wash. 204, 155 Pac. 1068.

In the instant case, the claim of right in good faith is supplied by the fact that the respondent went into possession by virtue of a deed from the state, which, as we have already shown, gave him color of title, and the only question to be determined then, under this section, is whether the respondent has been in actual and uninterrupted, open and notorious, hostile and exclusive possession.  If these facts have been shown, the respondent is entitled to succeed under both § 786 and § 156.

This then leaves for consideration but one question in the case, and that is as to what the nature of respondent's possession has been.  The facts as they

were testified to have been heretofore referred to in this opinion, but the appellant contends they are not sufficient for the reason that the respondent was only making such use of the property as was open to any one of the general public who might have a fishing license; that the stream being navigable, any one having a license from the state had a right to fish therein, and that such possession as the respondent had was not actual, open, notorious, uninterrupted, hostile and exclusive. It must be conceded, however, that the respondent did everything that ordinarily a person could do with property of this nature purchased for the purpose for which it was purchased. He used it at all seasons of the year in which it was usuable; he asserted his right to possession against everyone who interfered therewith, and based his right so to do upon his title from the state. Although, as appellant points out, he might have asserted his right against those who trespassed upon his fishing apparatus, he could do so upon the ground that, having a fishing license, he had a right to use the location for fishing purposes, even though he may not have had any title to the property. The fact remains that he did assert title.

Moreover, there is testimony, some of which, however, is disputed, that he did more than these things; that he drove piling and that he removed piling driven by others. The appellant asserts that the respondent, not having title to the water flowing over the bed of the stream, and the fish running in the stream not belonging to any one but the first taker thereof, and the respondent having only a license to fish, that the appellant, seeing the respondent so fishing on this property, would not have called to his attention the fact that the respondent was doing more than exercising the public right of fishing; that it was unneces-

sary to use the bed of the stream for that purpose, and that the case falls within the reasoning of those cases where it has been held that a person using vacant land for the purpose of pasturing cattle does not thereby give notice of adverse possession. *Bergere v. United States,* 168 U. S. 66, 42 L. Ed. 383; *Opp v. Smith,* 96 Neb. 224, 147 N. W. 672; *People's Savings Bank v. Bufford, supra.*

The answer to this, however, is that the respondent did everything with the property that from its nature was susceptible of being done, and that these acts were done with a claim of ownership. There was no necessity for him to post signs upon the property asserting his ownership, nor to engage in more extensive notice of his claim than the nature of the property called for.

"I do not think that a person, claiming right to land by virtue of his adverse possession under color of title by deed, should be restricted to so much only, as he and those under whom he claims have had in actual occupancy by substantial enclosures, or under cultivation; provided he has, for the requisite period of time, exercised such acts of ownership over the other parts of the land as are calculated to assert to the world a claim of right, or as will amount to actual possession. Whether these acts of ownership, or the conduct of the party, will be evidence of actual possession will depend upon the character of the land. We cannot expect the same evidence of occupancy of woodland as of a cultivated farm. Certain acts and conduct would be evidence of possession in the one case and not in the other. The question will always be, whether the use or occupancy is consistent with the character of the land. If a person, under color of title, enters upon a tract of woodland, and from time to time cuts and sells wood, and timber thereon, or does other acts of ownership consistent with the character of the land, it must be regarded as evidence of an intention to assert an ownership and possession of the tract; and if these acts are continued for the period of twenty

years, he is protected by his adverse possession against the claim of the legal owner." *Dem, ex Dem Saxton v. Hunt,* 20 N. J. L. 487.

In the case of *Ewing v. Burnet,* 11 Pet. (36 U. S.) 41, the supreme court of the United States was considering the question of adverse possession of an unoccupied lot composed chiefly of sand and gravel, and the principal use and value of which was in the digging of sand and gravel. The one claiming title by adverse possession claimed this property, and during that time he claimed the right of

"digging and removing sand and gravel from the lot; giving permission to some, refusing it to others; he brought actions of trespass against those who had done it, and at different times made leases to different persons, for the purpose of taking sand and gravel therefrom, besides taking it for his own use, as he pleased. . . . It was further in evidence that Samuel Williams, under whom the plaintiff claimed, lived in Cincinnati from 1803 till his death in 1824; was informed of defendant having obtained a deed from Symmes in 1803, soon after it was obtained, and knew of his claim to the lot; but there is no evidence that he ever made an entry upon it, demanded possession, or exercised or assumed any exercise of ownership over it."

The court further said:

"It is well settled that to constitute an adverse possession, there need not be a fence, building, or other improvement made . . . it suffices for this purpose that visible and notorious acts of ownership are exercised over the premises in controversy. . . . So much depends on the nature and situation of the property, the uses to which it can be applied, or to which the owner or claimant may choose to apply it; that it is difficult to lay down any precise rule adapted to all cases. But it may with safety be said that where acts of ownership have been done upon land which, from their nature indicate a notorious claim of property in

it, and are continued for twenty-one years, with the knowledge of an adverse claimant without interruption, or an adverse entry by him, for twenty-one years; such acts are evidence of an ouster of a former owner, and an actual adverse possession against him, if the jury shall think that the property was not susceptible of a more strict or definite possession than had been so taken and held. Neither actual occupation, cultivation or residence are necessary to constitute actual possession, . . . when the property is so situated as not to admit of any permanent useful improvement, and the continued claim of the party has been evidenced in public acts of ownership, such as he would exercise over property which he claimed in his own right, and would not exercise over property which he did not claim.''

In the case before us, the property was useful for fishing, and the respondent had brought actions against those who had invaded his rights. The plat by the state of tract 20 being a matter of public record, the appellant must be presumed to have had notice of it. The trial court, who heard the evidence, was satisfied that there had been such possession as is contemplated by the statute, and with that finding of fact we agree. So that it follows that, both under § 156 and § 786, the respondent is entitled to the decision of the case in his favor.

The judgment is affirmed.

HOLCOMB, C. J., PARKER, and MITCHELL, JJ., concur.

## ON REHEARING.

[*En Banc.*  February 9, 1921.]

PER CURIAM.—Upon rehearing *En Banc* and a careful reconsideration of the whole subject-matter, the majority of the court adheres to and affirms the views heretofore expressed in the above opinion.

The judgment is affirmed.