[No. 20326.  Department Two.  February 1, 1927.]

## NETHERLANDS AMERICAN MORTGAGE BANK, *Appellant,* v. EASTERN RAILWAY & LUMBER COMPANY, *Respondent.*[1]

[1] ADVERSE POSSESSION (4)—PROPERTY SUBJECT TO PRESCRIPTION—RAILROAD RIGHT OF WAY.  Clearing, fencing, cultivating and cropping land across which a railroad right of way has been granted, does not constitute an adverse claim inconsistent with the company's right, and will not create title by prescription against a company that never used the right of way or built its road.

[2] EASEMENTS (14)—TERMINATION—ABANDONMENT.  Non-user of a railroad right of way for thirty years, no road ever having been built or used, will not extinguish the right, under a condition subsequent in the grant to the effect that the right of way shall revert as soon as the railroad "built or operated" shall be discontinued or abandoned (PARKER, J., dissenting).

[3] RAILROADS (17)—RIGHT OF WAY—TITLE ACQUIRED BY GRANT.  A grant of a railroad right of way through certain sections one of which is "section twenty-three," constitutes a sufficient description to identify the land, and is constructive notice to a subsequent purchaser of an eighty acre tract in such section, until after the company establishes its route.

Appeal from a judgment of the superior court for Lewis county, Reynolds, J., entered July 6, 1926, in favor of the defendant, in an action to quiet title against the grant of a railway right of way, tried to the court. Affirmed.

*Wright, Froude, Allen & Hilen,* for appellant.
*C. D. Cunningham,* for respondent.

TOLMAN, J.—This is an appeal by the plaintiff from a decree dismissing its suit to quiet title to a farm in Lewis county and affirmatively establishing a right of

[1]Reported in 252 Pac. 916.

way through the premises for a private logging rail-road.

Appellant's title to the eighty acres affected by the right of way is deraigned from the estate of Charlemagne Tower through a deed containing no reservation with respect to the right of way, dated November 12, 1902, while respondent bases its claim to the right of way upon a deed from Charlemagne Tower and his wife, dated May 14, 1889, which grants to respondent's predecessor in interest

"All those four (4) several certain strips of land between parallel lines one hundred feet apart being fifty (50) feet on each side of the center line of the Tacoma, Olympia and Chehalis Valley Railroad Company's railroad as the same may be laid out and built on and across sections numbers seven (7) seventeen (17) twenty-one (21) and twenty-three (23) all in township number fourteen (14) north of range one (1) west of the Willamette Meridian, to be used by the said Railroad Company for railroad right of way or other railroad purposes only and to become and be the property of said parties of the first part hereto their heirs and assigns, whenever and as soon as the railroad to be built and operated over and upon the said right of way, shall be discontinued and abandoned by said Railroad Company or its successors or assigns;
. . ."

Appellant's immediate predecessor in title went into possession as beneficial owner under the deed of November 12, 1902, and at about the time that the deed bears date, and has ever since lived on the property, now being a tenant of the appellant. He began improving the property as soon as he took possession. In the fall of 1902, or in the year 1903, he entirely enclosed the eighty acres with a fence sufficient to turn cattle, which remained in effective use until destroyed by fire a year before this action was tried. In the years immediately

following, he slashed and burned much of the brush and timber, sowed grass seed and used the enclosure for pasture. This was followed by the clearing of the bottom lands suitable for meadow, which clearing was completed in 1914 and the meadow enclosed with a post and wire fence, and since has been kept up and used as such at all times. Appellant and its predecessor have paid taxes assessed against the land continuously from the year 1902 down to the time of the bringing of this action.

Respondent and its predecessors have never. built a line of railroad upon the eighty acres or taken any physical possession of any part thereof, save and except that, in the year 1909 or 1910, it caused to be made what is called the Berry survey across a portion of the eighty, but no stakes were set and no markings of any kind were made upon the ground. This paper survey did not cross what is now the cleared portion of the ground, barely touching it, if at all, and ran across the land up the hill on a higher level, affecting only a portion of the eighty which was of little value, and cutting off and isolating only a small piece of no practical value for farm purposes. A year or more before this action was brought, respondent surveyed a line for its logging road several hundred feet down the hill from the Berry survey, which crossed the meadow and, besides cutting therefrom the one hundred foot strip, segregated the remainder into separate parts lying on either side. Respondent contends that this later survey is upon the only practical route for a railroad across the land. Other facts will appear as we proceed.

The appellant assigns error upon the trial court's findings of fact as well as its conclusions of law, but we think it unnecessary to treat these assignments separately. Appellant's general contentions are (1) that

it and its predecessors have been in open, notorious and adverse possession for a sufficient time to cause the statute of limitations to run in their favor, (2) that the condition subsequent contained in the right of way deed has been broken by the failure to construct a railroad within a reasonable time, and (3) that the easement deed is void for indefiniteness and uncertainty of description.

[1] Adverse title can be gained to land granted and conveyed as a railroad right of way, but the adverse possession must be such as is inconsistent with the exercise of the right of way easement. *Northern Pacific R. Co. v. Spokane,* 45 Wash. 229, 88 Pac. 135.

"It is more difficult to satisfy the requisites of adverse possession in case of such property than in case of other kinds of property. Possession to be adverse must be hostile. It must also, of course, be nonpermissive. And to be hostile the acts of possession relied upon must be inconsistent with the right of the party performing them and also with the right or title of the other party." (Note on Adverse Possession of Railroad Right of Way, L. R. A. 1916B, 661.)

That rule when applied to the facts in this case at once demonstrates that adverse title was not here acquired. Every use the party in possession made of the land was perfectly consistent with his own actual rights and perfectly consistent with respondent's granted rights. There is nothing in clearing, fencing, cultivating and cropping of the land which gives notice of an intent to deny to the respondent the right to extend its logging road across the land whenever its needs call for such action, and the presumption will be that these things were done by permission until the contrary appears. *Northern Counties Inv. Trust v. Enyard,* 24 Wash. 366, 64 Pac. 516. When there is added to this the testimony offered in this case of two

reputable witnesses to the effect that appellant's pre-
decessor in 1913 stated that he recognized respondent's
right to the right of way and offered to make a deed
therefor, it becomes apparent that the trial court was
right in finding against title by adverse possession.

The cases of *Grays Harbor Commercial Co. v.
McCulloch,* 113 Wash. 203, 193 Pac. 709, and *Metro-
politan Building Co. v. Fitzgerald,* 122 Wash. 514, 210
Pac. 770, upon which appellant relies to support this
phase of its case do not touch upon right of way ease-
ments, nor consider the requirements necessary to
establish adverse possession in such cases, and so are
of no help to us here.

[2]    The condition subsequent is to the effect that
the right of way granted by the deed shall revert to the
grantor, his heirs or assigns, as soon as the railroad
built or operated thereon shall be discontinued or
abandoned by the railroad company.    Of course, no
railroad was ever built and no definite route was
selected, for a period of over thirty years.    It seems to
be the general rule that mere non-user for no matter
how long a period will not of itself extinguish such an
easement.    Tiedeman on Real Property, § 605.    And
here the record shows that respondent was using its
logging road to reach its timber and as it consumed
its timber the road was from time to time extended,
and only now has it become necessary for it to extend
the road through appellant's property in order to reach
and remove its timber lying beyond.    We cannot, from
the record before us, hold that there has been an inten-
tional abandonment, and yet may an indefinite, un-
certain and floating easement such as this be held in
abeyance to suit the convenience of the grantee and
thus, for a long period of time, place a cloud upon every
foot of land in the sections named in the grant, so that

the owners of the servient estates, if they use their property at all, must proceed to clear, improve, fertilize and enhance the value of the land at their peril, only to find in the end that their choicest fields are to be bisected and cut in twain and a strip of one hundred feet in width taken out diagonally from one extreme point to another?

It is said in 33 Cyc. 176:

"Where the grant provides that the right of way shall revert if the company ceases to use it as a railroad but specifies no time within which the road is to be constructed, there is an implied obligation on the part of the grantee to construct the road within a reasonable time."

The only authority cited to support this text is *Pollock v. Maysville, etc., R. Co.,* 19 Ky. 1717, 44 S. W. 359. Turning to that case we find that it was decided upon the theory of adverse possession (which we have already seen cannot be applied here) and in passing, and apparently as a makeweight only, without the citation of a single authority, the court said:

"It will be seen from the deed from Brown that it is provided that, if the appellee ceased to use the right of way as a railroad, it reverted to the vendor; and the deed in question seems to imply an obligation upon the part of appellee to construct the road within a reasonable time, and it can hardly be contended that 34 years is a reasonable time."

Much as we should like to hold with the appellant, we cannot accept this as sufficient authority.

In *Gurdon & Ft. Smith R. Co. v. Vaught,* 97 Ark. 234, 133 S. W. 1019, the court recognized the general rule that such an easement is not abandoned by non-user alone, and said:

"It is said, however, that abandonment will be more readily inferred when the easement was granted for

public purposes than when it was created for private use.''

And proceeded to find that the grantee had aban-doned the easement. The reversionary clause was mentioned only to show that by the abandonment the interest of the grantee had revested in the grantor.

*Brown v. Stuart,* 90 Kan. 302, 133 Pac. 725, seems to support appellant's contention in this respect, but the court gives no reason for its decision and cites no authority to support it. Appellant cites no other authorities upon this point and our own search has revealed none.

The authorities are almost, if not quite, unanimous in holding that as to an easement by grant, non-user alone, no matter how long continued, will not impair or defeat the right, and we are therefore forced to hold that mere non-user cannot cause a reversion upon a condition subsequent such as we have here, because to hold otherwise would be in effect to disregard all such authority.

The whole subject seems to be well summed up by Tiedeman in his work on Real Property, § 605, in the following language:

"This may occur (1) by acts of the owner of the dominant estate, or (2) by acts of the owner of the servient estate. An easement may be released by deed of the owner of the dominant estate, or it may be lost by abandonment. It cannot be released by parol agreement, unless the agreement is carried into execution by some affirmative act, as the creation of a new easement in the place of the old one, so that by non-user the first has been lost. Mere non-user, even though for twenty years, will not of itself extinguish the easement unless there has been adverse possession. It must be accompanied with the express or implied intention of abandonment, and the owner of the servient estate, acting upon the intention of abandonment and the actual non-

user, must have incurred expenses upon his own estate. The three elements, non-user, intention to abandon and damage to the owner of the servient estate, must concur in order to extinguish the easement.''

And so it was held by the supreme court of Massachusetts in *Arnold v. Stevens,* 24 Pick. 106, from which we quote the syllabus.

''In the case of a grant by deed of the right to dig ore in the land of another, the mere neglect of the grantee, for forty years, to exercise the right, without any act of adverse enjoyment on the part of the owner of the land, will not extinguish such right; and the occupation and cultivation of the land by the land owner during such period, are not evidence of adverse enjoyment of the right to dig the ore.''

[3] It will be remembered that this grant is of a right of way to be located through certain sections, section 23 among them. Appellant owns but eighty acres in section 23, and therefore until the line be surveyed and staked on the ground, a profile map filed or something be done giving notice of what is to be actually used, there is nothing but a floating right which, if valid, may remain indefinitely as a cloud upon the whole of every section of land named. Is such a floating right of way valid? ''A deed granting a railroad company a right of way will be void unless it contain a description sufficient to identify the land, or such a description as by resort to evidence will enable the land to be identified.'' 2 Devlin on Deeds (3d ed.), § 1011a. This is rather a general statement of the law and whether applicable here depends upon just what is meant by a description of the land. Here section 23, within which appellant's tract lies, is accurately described, and of course the right of way across it can only be accurately described when it has been definitely

located. Appellant relies upon *Detroit, Hillsdale & Indiana R. Co. v. Forbes,* 30 Mich. 165, but a careful study of that case convinces us that it does not reach the point. The court there said:

".  .  . until, therefore, the company should thereafter establish the line for the route of their road, the deed conveyed no land whatever, but only the right thereafter to locate their road over any portion of said tract, which location, when it should be thereafter made, would, together with the deed, operate as a conveyance of the one hundred feet lying equally on each side of the center line . . .

"Until such actual location, therefore, the title of the whole forty acres remained in the plaintiff below, and it was competent for him to do with or upon it all he could have done before the deed was executed."

That merely says that while the right to locate still exists until exercised, no title to a specific portion of the land passes to the grantee in the easement deed. Here we are concerned with the right to locate only, and so that case is really an authority for the respondent's position. The exact question seems to have been passed upon by the Indiana supreme court in *Burrow v. Terre Haute & L. R. Co.,* 107 Ind. 432, 8 N. E. 167, where it is said:

"Contracts such as the one before us are made to carry into effect a purpose known to the contracting parties, and authorized by a public law, and they must have a reasonable construction. It cannot be known in advance where the railway will be located, and it is consequently held that, within fair and reasonable restrictions, such contracts as the present must be understood as vesting in the railway company a right to select a location."

Such seems to be the general rule. 19 C. J. 971.

Appellant became the owner of the eighty acres in question with constructive notice given it by the re-

cording of the right of way deed and is therefore bound thereby.

The judgment appealed from is affirmed.

MACKINTOSH, C. J., ASKREN, and BRIDGES, JJ., concur.

PARKER, J. (dissenting)—I think the long delay by the respondent in failing to construct the road and so use the right of way should be held to constitute an abandonment of the grant. I therefore dissent.