[No. 8514-7-III. Division Three. June 30, 1988.]

ROBERT E. KESINGER, ET AL, *Respondents*, v. EGAN LOGAN, ET AL, *Defendants*, SELAH MOXEE CANAL CO., *Appellant*.

*Thomas D. Nagle* and *Roy & Pell,* for appellant.

*Timothy R. Weaver* and *Hovis, Cockrill, Weaver & Bjur,* for respondents.

GREEN, J.—Robert and Mary Kesinger commenced this action to quiet title in themselves to certain land in Yakima County that Selah Moxee Canal Co., known as Selah–Moxee Irrigation District, claims as part of its canal right of way. The District counterclaimed seeking a decree establishing a 100–foot right of way, *i.e.,* 50 feet on each side of the center line of its canal. Assuming there was a 100–foot right of way, the dispositive issue is whether the Kesingers and their predecessors in interest acquired a 20–foot–wide portion thereof by adverse possession. Summary judgment was granted in favor of Kesingers and the District appeals. We affirm.

To dispose of this appeal, it is necessary to relate the recorded history of the Kesinger property. During the late 1800's, Wenzel Maywald, along with several neighboring landowners, constructed a canal to carry irrigation water from the Yakima River to their lands. On November 18, 1899, George S. Rankin contracted to purchase the canal from Mr. Maywald and his neighboring landowners. In the contract which was recorded, Mr. Maywald and his neighbors agreed to convey all right, title and interest in the canal, their water rights, and "a right–of–way one hundred feet in width, that is, fifty feet on each side of the center-line of said ditch [canal], through their respective lands . . ." The documents of conveyance were to be executed and delivered to Mr. Rankin no later than January 1, 1904; provided, Mr. Rankin complete a larger canal to a point opposite the mouth of the Naches River by January 1, 1904, the construction activities not interfere with the farmers' use of water in the canal, and a waterway be built for return of unused water to the Yakima River. Mr. Rankin also agreed that he and his heirs and assigns would forever deliver irrigation water to these landowners and their heirs or assigns free of charge.

Mr. Maywald and his neighbors reserved use of the land in the right of way so long as the use did not interfere with the maintenance, operation and protection of the canal. Mr. Rankin and his successors in interest have supplied water to these lands free of charge since 1900. It is unknown whether documents of conveyance to Mr. Rankin were executed; none have been recorded and none were produced.

The recorded documents show that in 1910 Mr. Rankin quitclaimed his rights to the canal and right of way to the Selah Moxee Canal Company. Unfortunately, this document did not contain a legal description reflecting the width of the right of way. Neither do the records reveal a conveyance from the Selah Moxee Canal Company to the Selah–Moxee Irrigation District, the present operator of the

canal, except for minutes of a Yakima County Commissioner's meeting authorizing incorporation of the District under RCW Title 87, the Washington irrigation code.

In 1911 Mr. Maywald conveyed his property to Gus Sipp. Notably absent from the deed is a reference to the canal right of way. Subsequently, the property was conveyed to Claus Sipp who deeded it to Mr. Darnell in 1945. For the first time in the Kesingers' chain of title, the legal description referred to the canal right of way: "[T]hence south 80° East 894 feet more or less to the West right of way line of the Selah–Moxee canal". In subsequent conveyances, this reference has been included in the description without significant variation.

In 1970 the Roland Leenhouts, who then owned the property, began developing a mobile home park. Since their acquisition in 1946, the Leenhouts had farmed the property and maintained an irrigation ditch and temporary fences within the 20–foot disputed area. In 1972 the Leenhouts conveyed the property to their son, Dean. In 1974 a fence was erected and mobile home pads were built 30 feet or more from the then center line of the canal. According to the deposition of Dean Leenhouts, he "got ahold of a representative from the ditch company" to come to the property. That representative

> got out a piece of paper and he said, okay, his words were you have a 30 foot right–of–way from the center of the ditch, 30 feet each way.
> . . . I said fine, because I went out and I measured from the center of the ditch, 30 feet, as best I could, and I moved the fence back several feet onto our property so that we would be sure and not have a conflict. But we mutually agreed, because I did not know exactly where the property boundaries were, and so I didn't want to invest that kind of money and have to move it . . .

Mr. Leenhouts could not remember the name of the person with whom he had the conversation. In 1981, the property was sold on contract to Egan Logan, who in turn sold the property in 1982 to the Kesingers by purchaser's assignment of contract and deed. The document surrounding this

transaction provides the sale was subject to the November 18, 1899, Rankin contract which provided for a 100–foot–wide right of way.

Based on the foregoing undisputed facts, the trial court granted summary judgment to the Kesingers and the District appeals. In reviewing a summary judgment, we engage in the same inquiry as the trial court. Summary judgment is proper only where the pleadings, affidavits, depositions and admissions on file and reasonable inferences therefrom, when viewed in a light most favorable to the nonmoving party, demonstrate no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *LaPlante v. State,* 85 Wn.2d 154, 158, 531 P.2d 299 (1975); *Balise v. Underwood,* 62 Wn.2d 195, 199, 381 P.2d 966 (1963).

First, the District contends since it is a municipal corporation holding the right of way in public trust in its governmental capacity, the right of way or any portion thereof is not subject to acquisition by another through adverse possession. It relies on *Haberman v. WPPSS,* 109 Wn.2d 107, 171, 744 P.2d 1032, 750 P.2d 254 (1987) (irrigation district is municipal corporation created for a public purpose under the Consumer Protection Act); *Commercial Waterway Dist. 1 v. Permanente Cement Co.,* 61 Wn.2d 509, 379 P.2d 178 (1963); 16 U.S.C. § 835 (Columbia Basin Project); and RCW 87.03 (irrigation districts generally). On the other hand, the Kesingers rely on *In re Horse Heaven Irrig. Dist.,* 11 Wn.2d 218, 118 P.2d 972 (1941), involving the dissolution of an irrigation district. There, at page 227, the court stated an irrigation district owns and uses property in a strictly proprietary capacity for the primary benefit of the owners of the land included within the district and exercises no governmental functions. Thus, the Kesingers claim the property is subject to adverse possession. For purposes of discussion, we assume the District's position is correct.

Adverse possession does not run against a governmental body holding land for public purposes. *Goedecke v.*

*Viking Inv. Corp.,* 70 Wn.2d 504, 424 P.2d 307 (1967); *Sisson v. Koelle,* 10 Wn. App. 746, 748, 520 P.2d 1380 (1974). However,

> if land is held by a governmental body in its proprietary, as opposed to governmental capacity, the land is subject to being acquired by adverse possession the same as if owned by a private individual. *Commercial Waterway Dist. 1 v. Permanente Cement Co., [supra* at 512].

*Sisson v. Koelle, supra* at 748–49. The court in *Sisson* then held, at page 751, that where land owned by a county is "never devoted to any use, public or otherwise . . . [the land] was held in a proprietary capacity and subject to adverse possession the same as if owned by a private individual." In *Sisson* the court found that Clallam County had "'abandoned and forgotten about and had done nothing to sustain any title, or ownership, or control, of the land in question.'" *Sisson,* at 751. That is true here.

The record indicates the property in question has never been set apart or devoted to any use by the District. In fact, there is no record of the right of way ever being conveyed to the District. The only use to which it has ever been put is by the Leenhouts and their predecessors who farmed and fenced the disputed area from the 1940's and then in 1970 commenced building their mobile home court. The fence that was erected in 1974, 30 feet from the center line of the canal, followed virtually the same line as the head ditch and temporary fences used over the years in farming operations. Moreover, the fence and concrete mobile home pads were constructed only after consultation with a representative of the District. Consequently, the 20–foot disputed area was held by the District in its proprietary capacity and is subject to acquisition by adverse possession.

To establish title by adverse possession, the possession must be (1) exclusive, (2) actual and uninterrupted, (3) open and notorious, and (4) hostile and under a claim of right made in good faith. *Chaplin v. Sanders,* 100 Wn.2d 853, 857, 676 P.2d 431 (1984). These elements must exist concurrently for 10 years. RCW 4.16.020; *Chaplin,* at 857.

The hostility/claim of right element requires only that the claimant "treat the land as his own as against the world throughout the statutory period." *Chaplin,* at 860–61. The claimant's subjective belief and intent to dispossess or not dispossess are irrelevant to this determination. Permission to occupy the land, given by the true title owner to the claimant, operates to negate the element of hostility. *Chaplin,* at 861–62.

■ With respect to the hostility element, the District asserts under *Netherlands Am. Mortgage Bank v. Eastern Ry. & Lumber Co.,* 142 Wash. 204, 252 P. 916 (1927) and *Northern Cys. Inv. Trust, Ltd. v. Enyard,* 24 Wash. 366, 64 P. 516 (1901) that the Kesingers' and their predecessors' possession of the disputed area was neither hostile nor inconsistent with the District's rights; but rather, it was permissive under the provisions of the Rankin contract. The decisions relied upon relate to railroad rights of way. In one case a farmer cleared the area, cultivated and fenced it and in the other similar activities occurred to within 25 feet of the track. It was held the use was not inconsistent with the railroad's rights and therefore not hostile. We do not find these decisions controlling.

Here, the Leenhouts and the District representative jointly determined the location of the fence based on the location of the boundary of the District's right of way. The fence and mobile home pads were permanent–, not temporary–, type structures. Since 1974, the Leenhouts and the Kesingers exclusively occupied the area under a claim of right—hostile to any claim by the District. The permanency of the structures and their use distinguishes this case from the decisions relied on by the District. Thus, the hostility element is satisfied. The record also discloses the Kesingers and their predecessors had exclusive, actual and uninterrupted use of the property under a claim of right for over 10 years.

Next, the District asserts Kesingers' possession was not open and notorious because it was unaware anyone was using the disputed area in a manner inconsistent with use

of the right of way. Regarding this element, the court in *Chaplin,* at 862, stated:

In *Hovila v. Bartek,* 48 Wn.2d 238, 242, 292 P.2d 877 (1956), we stated that the requirement of open and notorious is satisfied if the title holder has actual notice of the adverse use throughout the statutory period. This is consistent with the purpose of the requirement, which is to ensure that the user makes such use of the land that any reasonable *person* would assume he is the owner. R. Powell, at ¶ 1013[2][b]. For this reason the owner is held to constructive notice of the possession. When the owner has actual knowledge of the possession, the requirement's purpose has been satisfied.

The court further stated at page 863:

In determining what acts are sufficiently open and notorious to manifest to others a claim to land, the character of the land must be considered. *Krona v. Brett,* 72 Wn.2d 535, 433 P.2d 858 (1967). "The necessary use and occupancy need only be of the character that a true owner would assert in view of its nature and location." *Krona,* at 539.

(Italics omitted.)

■ Applying *Chaplin*[1] and *Krona v. Brett,* 72 Wn.2d 535, 433 P.2d 858 (1967), the record supports the conclusion the District knew, or should have known, that the construction of the fenced–in mobile home park situated on the disputed area manifested an ownership claim. These structures conveyed a notice of permanency and are activities characteristic of a true owner. The record shows that in 1975 Gerald Helde, the District's manager, knew from personal measurements that three mobile homes were situated less than 50 feet from the canal center line. The meeting between the Leenhouts and the unknown District representative regarding placement of the fence occurred in 1974. Dean Leenhouts testified he and his father had previously farmed and fenced the disputed area since the

---

[1]The District argues *Chaplin* is inapplicable because that case dealt with notice to a fee simple owner, not an owner of a mere right of way. The District fails to cite any authority for this proposition and it will not be considered.

1940's and that old irrigation head ditch gates came right along the general location of the present fence. Also, Mr. Helde testified that after the mobile home court and fence were constructed, the District occasionally had difficulty servicing the canal because of the mobile home park fence, but no action was taken for its removal.

As to the last element, the District relies on *Thompson v. Smith,* 59 Wn.2d 397, 367 P.2d 798 (1962) to contend that the Kesingers' asserted adverse possession did not continue for the 10–year statutory period because a cause of action could not accrue until the fence hindered the District's use of the right of way in 1976. *Thompson* was an action to enjoin placement of a concrete slab onto 10 feet of land that was intended to be used for road purposes. The court, citing *Netherlands Am.,* stated at pages 407–08:

> Mere nonuse, for no matter how long a period, would not extinguish the easement. However, it is also the law that the owner of the property has the right to use his land for purposes not inconsistent with its ultimate use for the reserved purpose during the period of nonuse. The rule is that where a right of way is established by reservation, the land remains the property of the owner of the servient estate and he is entitled to use it for any purpose that does not interfere with the proper enjoyment of the easement.

The court further stated at page 409:

> However, we do not believe that a structure that could not be removed without substantial cost should be permitted in such an easement, unless there is some guarantee that it will be removed if necessary.

The remedy available to the District here would have been to have brought an action to enjoin construction of the fence and mobile home pads in the disputed area. It did not do so. It should have been evident to the District's representative at the time the boundary was agreed upon that the District's use might be impaired. Moreover, the area had never been used or devoted by the District to any purpose. Thus, we conclude its use by the Kesingers and their predecessors was adverse at least since construction of the

mobile home park in 1970 and perhaps since the early days of farming the area. *Chaplin v. Sanders, supra;* RCW 4.16-.020.

Since our review of the record reveals no dispute of material fact, we conclude, as did the trial court, that the Kesingers have established each element of adverse possession and summary judgment was properly granted. *LaPlante v. State, supra; Balise v. Underwood, supra.*

In light of our decision, we do not reach the other issues raised by the District.

Affirmed.

McINTURFF, C.J., and MUNSON, J., concur.

Review granted by Supreme Court November 1, 1988.