# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| PHYLLIS RAINWATER, | No. 58308-9-II |
| Appellant, | |
| v. | |
| RAINSHADOW STORAGE, LLC, a Washington Limited Liability Company; JOHN R. DICKINSON and LORI R. DICKINSON, dba WE DIG IT, | UNPUBLISHED OPINION |
| Respondent. | |

VELJACIC, A.C.J. — Phyllis Rainwater appeals the trial court's dismissal of her adverse possession claim filed against her neighbor to the east, Rainshadow Storage, LLC. Phyllis[1] contends that there is substantial evidence in the record to show that she established adverse possession over the disputed property. We affirm and award attorney fees to Rainshadow.

## FACTS

### I. BACKGROUND FACTS[2]

Roger and Helen Clark purchased property on Strawberry Lane in Sequim in 1988. At some point, trees were planted near the eastern border of their property. Donna Gast, a neighbor, testified that she remembered the trees were there when she purchased her home in 1988. The

---

[1] To avoid confusion, this opinion refers to Phyllis Rainwater and her late husband, Gene Rainwater, by their first names. No offense is intended.

[2] Our background facts rely in part on the trial court's findings of fact, which are unchallenged except for findings of fact 17 and 26. Unchallenged findings of fact are verities on appeal. *Seven Hills, LLC v. Chelan County*, 198 Wn.2d 371, 384, 495 P.3d 778 (2021).

trees were described as ornamental with limbs that grew long and touched the ground. The land surrounding the trees was thick with vegetation, such as brambles, thistles, and berry bushes. The area was so thick that it was impossible to see through the trees and shrubbery. Phyllis and Gene purchased the property from the Clarks in June 2003.

In the late fall of 2003 or early 2004, Phyllis's neighbors, Gast and her husband, approached Phyllis about using her pasture to hold their miniature horses. The pasture area was located directly adjacent to the disputed area. The Gasts trimmed the lower branches of the trees and affixed a wire livestock fence to the trunk of the trees to enclose the pasture area for their miniature horses. The fence was fastened to the west side of the tree trunks facing Phyllis's property out of convenience. The tree trunks themselves were on the neighbor's side of the property. While the fence remained in place, the fence was never maintained after it was installed and it became overgrown and hidden.

Next to Phyllis's property was property previously owned by Dale and Troye Jarmuth. The wire fence did not fully enclose Phyllis's property nor prevent the Jarmuths from accessing the trees. Furthermore, the fence could not be discovered because the vegetation on the Jarmuth side was so dense. Jarmuth intentionally maintained a thick, vegetative buffer to act as a protective barrier for wildlife, but the trees did not ever exclude the Jarmuths from accessing their property. The Jarmuths did not discuss the boundary line with Phyllis, nor were they aware that the Gasts had installed wire fencing along the trees.

Rainshadow purchased the Jarmuths' property in early 2017 as a site for a storage facility. In searching out the boundary lines, Rainshadow learned that the trees between the two properties were located approximately five-to-six feet onto Rainshadow's property.



Ex. 16. As part of the permitting process for its storage units, Rainshadow was required to move an irrigation pipe that was located under the trees. The trees needed to be removed to relocate the pipe. Rainshadow did not know, or have reason to believe, that Phyllis was claiming ownership of the trees. The area was overgrown and uncared for. In February 2017, the trees were cut down and We Dig It was hired to remove the trees stumps.

## II. PROCEDURAL HISTORY

In June 2017, Phyllis filed a complaint against Rainshadow, We Dig It, and We Dig It's owners, John and Lori Dickinson, for quiet title, ejectment, and damages to property regarding the trees' removal.[3] Phyllis alleged that she acquired title to the property near the trees by adverse possession. The trial court granted Rainshadow's summary judgment motion, concluding that

---

[3] Phyllis also sued the Dickinsons' insurance carrier, Liberty Mutual Insurance Company, but the parties later agreed to dismiss Liberty Mutual as a party.

Phyllis failed to establish the elements of adverse possession. We reversed the trial court's summary judgment order and remanded. *Rainwater v. Rainshadow Storage*, No. 52757-0-II, slip op. at 2 (Wash. Ct. App. Apr. 21, 2020) (unpublished), https://www.courts.wa.gov/opinions/pdf/D2%2052757-0-II%20Unpublished%20Opinion.pdf. We concluded that Phyllis demonstrated genuine issues of material fact on all the elements of adverse possession. *Id.* at 10.

During a bench trial on remand,[4] Phyllis testified that a realtor told her the trees were on her property. She also testified that she and Gene loved Shakespeare and gave the trees Shakespearean names. And the two would sit under the trees. Phyllis testified that they would refer to the property on their side of the trees as "the pasture." 2 Rep. of Proc. (RP) at 473. She also testified that there was an irrigation system in the pasture that could reach the trees.

Phyllis presented several aerial photographs of the property. The images showed that Phyllis's side of the trees appeared mowed up to the tree areas. Terry Curtis, a certified photogrammetrist, reviewed the aerial photographs and testified that the trees were about five feet to the east of Phyllis's property line. And that there was "some activity" on Phyllis's side of the property from 1997 through 2016. 2 RP at 373-74. But Curtis could not determine for certain the activity under the trees based on the photographs. He could only testify to the edge of the foliage of the trees.

Rainshadow alleged that Phyllis and Gene moved to Arizona in May 2013. It submitted a declaration from a moving business that helped her relocate. Nevertheless, Phyllis and Gene continued to own the property. They visited the property in 2015 or 2016, before Gene's death. While it was left vacant for a while, Phyllis now uses it as a rental.

---

[4] The matter went before a different judge on remand.

III.    TRIAL COURT'S FINDINGS OF FACT AND CONCLUSIONS OF LAW

After the bench trial, the trial court entered findings of fact and conclusions of law.  In finding of fact 17, the court found:

> It is less clear what the property looks like on the Rainwater side of the line of trees, but after reviewing a number of photographs, the Rainwater[s'] photogrammetry expert could not provide an opinion as to what activity, if any, had occurred on the land beneath the trees during the historical review of the aerial/satellite photographs.

Clerk's Papers (CP) at 53.  And in finding of fact 26, the court found:

> [A]ctivity under the trees can only be characterized as minimal.  This is rural land. Even if the Jarmuths were aware that the Rainwaters sat under the trees and mowed around the tree trunks, they most likely would not have found either of those activities objectionable.

CP at 55.

The trial court concluded that Phyllis failed to show possession of the tree area was open and notorious, actual and uninterrupted, exclusive, and hostile for a 10-year period.  The court awarded Rainshadow $87,193.18 in attorney fees and costs.  Phyllis appeals.

ANALYSIS

Phyllis contends that substantial evidence does not support the trial court's findings of fact that it was unclear what the property looked like on her side of the property prior to the trees being cut down and that her and her husband's activity under the trees can only be characterized as minimal and not objectionable to the Jarmuths.  Phyllis further contends that the findings of fact do not support the court's conclusions of law that she failed to establish the adverse possession elements.  We disagree.

I.    LEGAL PRINCIPLES

One may acquire legal title to another's land through adverse possession by possessing the property in a manner that is (1) exclusive, (2) actual and uninterrupted, (3) open and notorious,

5

and (4) hostile. *Gorman v. City of Woodinville*, 175 Wn.2d 68, 71, 283 P.3d 1082 (2012). All of these elements must be proven and that they existed concurrently for at least ten years. *Id.*; RCW 4.16.020(1).

We presume the holder of legal title maintains possession of their property. *ITT Rayonier, Inc. v. Bell*, 112 Wn.2d 754, 757, 774 P.2d 6 (1989). Therefore, the party claiming adverse possession bears the burden of establishing the existence of each element by a preponderance of evidence. *Id.* A preponderance of the evidence means that a fact finder must be persuaded that the facts are "more likely than not." *Anderson v. Akzo Nobel Coatings, Inc.*, 172 Wn.2d 593, 608, 260 P.3d 857 (2011).

Adverse possession presents a mixed question of law and fact. *Herrin v. O'Hern*, 168 Wn. App. 305, 311, 275 P.3d 1231 (2012). When reviewing a trial court's decision following a bench trial, we review whether substantial evidence supports the court's findings of fact and whether the findings support the court's conclusions of law. *Viking Bank v. Firgrove Commons 3, LLC*, 183 Wn. App. 706, 712, 334 P.3d 116 (2014). Substantial evidence is evidence sufficient to persuade a rational, fair-minded person that the premise is true. *Id.* We view the evidence and all reasonable inferences therefrom in the light most favorable to the prevailing party, and we do not review the trial court's credibility determinations. *Columbia State Bank v. Invicta Law Grp. PLLC*, 199 Wn. App. 306, 319, 402 P.3d 330 (2017). We determine de novo whether the underlying facts support the trial court's conclusion that the adverse possession claimant fulfilled the elements. *Viking Bank*, 183 Wn. App. at 712.

II.    DISPUTED FINDINGS OF FACT

Phyllis first challenges finding of fact 17, where the court found, "It is less clear what the property looks like on the Rainwater side of the line of trees." CP at 53.

Phyllis presented several aerial photographs of the property. The images showed that Phyllis's side of the trees appeared mowed up to the tree areas. Curtis testified that there was "some activity" on Phyllis's side of the property from 1997 through 2016. 2 RP at 373-74. But Curtis could not determine for certain the activity under the trees based on the photographs. Because the tree branches were wide and extended to the property, Curtis could only testify to the edge of the foliage of the trees. Viewing this evidence in the light most favorable to Rainshadow, this evidence is sufficient to persuade a rational, fair-minded person that it is less clear what it looked like on Phyllis's side of the trees prior to their removal. Accordingly, substantial evidence supports this finding of fact.

Phyllis next challenges finding of fact 26, where the court found, "[A]ctivity under the trees can only be characterized as minimal. . . . . Even if the Jarmuths were aware that the Rainwaters sat under the trees and mowed around the tree trunks, they most likely would not have found either of those activities objectionable." CP at 55.

Phyllis testified that she and Gene gave the trees Shakespearean names. And that the two would sit under the trees. They also had a sprinkler system on their property and water could reach the trees. Viewing this evidence in the light most favorable to Rainshadow, this evidence is sufficient to persuade a rational, fair-minded person that Phyllis and Gene's use was minimal and naming the trees, sitting under them, or even watering them would most likely not be objectionable to the trees' owners. Accordingly, substantial evidence supports this finding of fact.

III.    ADVERSE POSSESSION

Phyllis next contends that the trial court's conclusions of law regarding the adverse possession elements are not supported by the court's findings of fact. We need only hold that one

7

element of adverse possession is not established and Phyllis's adverse possession claim fails. *See Gorman*, 175 Wn.2d at 72 (all of the elements of adverse possession must be established).

Use is open and notorious if it is "'of the character that a true owner would assert in view of its nature and location.'" *Chaplin v. Sanders*, 100 Wn.2d 853, 863, 676 P.2d 431 (1984) (emphasis omitted) (quoting *Krona v. Brett*, 72 Wn.2d 535, 539, 433 P.2d 858 (1967)). This element is met if (1) the true owner has actual notice of the adverse use throughout the statutory period or (2) the claimant uses the land in such a way as would lead any reasonable person to assume that the claimant is the owner. *Kesinger v. Logan*, 51 Wn. App. 914, 921, 756 P.2d 752 (1988).

The trial court found that the area in dispute was thick with vegetation. The wire fence installed by the Gasts was not visible from the Jarmuths' side. The Jarmuths intentionally maintained a thick, vegetative buffer to act as a protective barrier for wildlife, but the trees did not ever exclude the Jarmuths from accessing their property.

The trial court correctly applied the standard set forth in *Chaplin* and *Kesinger* in concluding that the findings of fact support the conclusion that not only was there no evidence that the Jarmuths knew about Phyllis's minimal use of the disputed area, but that Phyllis failed to establish on a more likely than not basis that any reasonable person would have known about the use.

Because we hold that Phyllis failed to establish at least one of the elements of adverse possession, we need not address the other elements or whether her actions lasted for 10 consecutive years. Therefore, the trial court correctly concluded that Phyllis failed to show she acquired the property through adverse possession.

8

IV.     ATTORNEY FEES BELOW

Phyllis contends that we should reverse the award of attorney fees under RCW 7.28.083 to Rainshadow because she should have been the prevailing party.  The trial court may enter an award for reasonable attorney fees to "[t]he prevailing party in an action asserting title to real property by adverse possession"  RCW 7.28.083(3).  In accordance with our conclusion that Phyllis did not establish that she owned the property in question through adverse possession, the court did not err in awarding attorney fees to Rainshadow as the prevailing party.

V.     ATTORNEY FEES ON APPEAL

Both parties request attorney fees on appeal under RAP 18.1 and RCW 7.28.083(3).  RAP 18.1 grants us the ability to award attorney fees if applicable law allows.  Under RCW 7.28.083(3), "[t]he prevailing party in an action asserting title to real property by adverse possession may request the court to award costs and reasonable attorneys' fees," and the court may award such costs if it "determines such an award is equitable and just."  Attorney fees under RCW 7.28.083(3) are available to parties prevailing on appeal.  *Workman v. Klinkenberg*, 6 Wn. App. 2d 291, 308-09, 430 P.3d 716 (2018).

Because the trial court awarded Rainshadow attorney fees below and because it is the prevailing party on appeal, we determine attorney fees on appeal are equitable and just.  Therefore, we award reasonable attorney fees to Rainshadow as the prevailing party on appeal subject to compliance with RAP 18.1.

CONCLUSION

Substantial evidence supports the challenged findings of fact and the findings of fact support the trial court's conclusions of law that Phyllis failed to establish the existence of all the elements of adverse possession.  Accordingly, the trial court did not err in dismissing Phyllis's

adverse possession claim. Additionally, the trial court did not err in awarding Rainshadow its attorney fees under RCW 7.28.083(3).

We affirm and award attorney fees on appeal to Rainshadow.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
Veljacic, A.C.J.

We concur:

_____
Glasgow, J.

_____
Price, J.