## \*Boyd *v.* Hunt.

### (*Jackson.*   May 22, 1899.)

1. EASEMENT. *Alley.*

Failure to use an alley, in order to amount to an abandonment of an easement therein, must be accompanied by some act of the owner of the dominant estate clearly indicating his purpose to set up no further claim, and such intent cannot be inferred from the mere fact, in connection with long nonuse, that the owner of the servient estate excavated under and projected his buildings above the alley, erected at its entrance a gate, which, however, was not inconsistent with the enjoyment of the easement, and may have been attributed by the owner of the easement to a desire to keep out the public. (*Post, pp. 496–508.*)

2. SAME. *Created by stipulation in deed.*

A stipulation in a deed, that the lot conveyed shall adjoin an alley, to be carved out of the grantor's adjoining property, and to be perpetually kept open for the common use, imposes a servitude upon the land thus set apart as an alley, and in this land the grantee has the dominant, and the grantor the servient, estate. (*Post, pp. 496–498.*)

Cases cited: Crutchfield *v.* Car Works, 8 Bax., 242; Brew *v.* Van Deman, 6 Heis., 433.

3. SAME. *Passes by transfer of dominant estate.*

And such easement passes by conveyance of the lot to which it is thus annexed. (*Post, pp. 498, 499.*)

4. SAME. *Nonuser.*

Mere nonuser, however long continued, affords no sufficient evidence of abandonment of an easement created by express grant. The failure to use must be accompanied by some act of the owner of the dominant estate, clearly indicating his purpose to set up no further claims, in order to work abandonment. (*Post, pp. 499, 500.*)

\*On the question of the nonuser of an easement, there is a review of the decisions in note to *Welsh* v. *Taylor* (N. Y.), 18 L. R. A., 535.—REPORTER.

Boyd *v.* Hunt.

Cases cited and approved: Railroad *v.* French, 100 Tenn., 209; 83 Ky., 628; 110 Ill., 264; 49 N. Y., 348; 82 Pa. St., 208; 47 N. J. Eq., 421 (S. C., 10 L. R. A., 276); 38 N. J. Eq., 20; 11 Gray, 423; 140 Mass., 205; 112 Mass., 224; 18 L. R. A., 535.

Cited and distinguished: Monaghan *v.* Memphis Fair Co., 95 Tenn., 108.

---

FROM SHELBY.

---

Appeal from Chancery Court of Shelby County. LEE THORNTON, Ch.

J. H. MALONE for Boyd.

MORGAN & McFARLAND and PEREZ & LEHMAN for Hunt.

BEARD, J. The complainants are the owners of the south part of lot 237, on Main Street, in Memphis, while the defendants, Mrs. Hunt and Mrs. Phelan, are owners of the northern part of the same lot, and both parties trace their titles back to a common source—one W. B. Greenlaw. The original deed from Greenlaw, under which complainants claim, was made on January 7, 1851, and described the lot now owned by them in these words: "Beginning on Main Street (the east side of Main Street at the southwest corner of the lot 237), running thence east 100 feet on a line parallel with Main Street to — foot alley; thence north with said alley 24 feet 9 inches to a stake (the above men-

Boyd *v.* Hunt.

tioned alley shall be perpetually kept open to Monroe Street for common use); thence with a line parallel with Monroe Street west 100 feet to the east side of Main Street, 24 feet 9 inches to the beginning, this lot being the south portion of the subdivision of lot No. 237, as aforesaid."

A few months thereafter Greenlaw conveyed the remainder of lot 237 to the predecessor in title of the defendants, describing it as having a front on Main Street, and running back 100 feet. The title to this portion of that lot passed through various intervening conveyances until it was lodged, in the year 1857, in W. R. Hunt. In all these conveyances, the description of this lot carried it back to this private alley. In 1859, W. B. Greenlaw, for the recited consideration of five dollars, deeded this alley to Hunt, and, in 1865, he conveyed to his wife, Mrs. Hunt, one of the defendants, his entire holdings in lot 237, describing them as having a front on Main Street of $49\frac{1}{2}$ feet, running eastward 108 feet, thus embracing therein this alley. Mrs. Hunt and her co-respondent, Mrs. Phelan, are now the owners of this property.

The bill in this case avers that these defendants, with their lessee, Loeb, have very recently erected across this alley a solid brick wall, and a gate at the entrance to the alley, so as to prevent complainants from passing from the rear of their lot, over the alley, to Monroe Street, and the purpose and

18 P—32

prayer of the bill is to compel, through proper decree, a removal of this wall and gate.

No question is, or on this record could be, made as to the creation of an easement in the strip of land described in Greenlaw's deed by the stipulation already set out, but relief is resisted by the defendants on the ground that complainants and their privies in estate, abandoned this easement in 1859, and that the defendants, and those from whom they claim, have been in open, exclusive, and adverse possession of that part of the alley in the rear of their lot since 1859, so that the easement now claimed by complainants has been long since extinguished.

Before coming to the discussion of the issues made by this defense, it is not improper to advert to certain well-established principles of the law of easement, which may assist in their determination. In the first place, there can be no doubt that, by the stipulation in question, the easement thereby created was appurtenant to the lot then conveyed, and that, with regard to the strip of land thus set apart for an alley, a servitude was imposed upon it, and, as to it, Greenlaw's then vendee had the dominant and the vendor, Greenlaw, the servient estate. Wash. on Ease. & Serv., pp. 10, 11; *Crutchfield* v. *Car Works*, 8 Bax., 242; *Brew* v. *Van Deman*, 6 Heis., 433.

Again, there is as little doubt that this easement, so annexed to this lot, in the hands of Greenlaw's

vendee, has passed as appurtenant to it, with the various transmutations of title, to the complainants as privies in estate of the first taker, and that the charge on the servient tenement has followed it into the hands of the defendants, Mrs. Phelan and Mrs. Hunt (*Hills* v. *Miller*, 3 Paige Chy. R., 254; Wash. on Ease. & Serv., 4th Ed., 34–37; *Crutchfield* v. *Car Works*, *supra*), unless it be that it has been extinguished, as is alleged by the defendants.

Further, mere nonuser will not amount to an abandonment which will impair or defeat an easement. The failure to use must be accompanied by some act of the owner of the dominant estate, clearly indicating his purpose to set up no further claim, in order to work abandonment. Wash. on Ease. & Serv., 707–717. And the cases, as well as text-books, concur in the proposition that this is true, especially as to easements created, as the one in controversy was, by grant. *Curran* v. *Louisville*, 83 Ky., 628; *Krecken* v. *Voltz*, 110 Ill., 264; *Wiggins* v. *McClary*, 49 N. Y., 348; *Bombaugh* v. *Miller*, 82 Pa. St., 208; 2 Wash. on Real Property, 312.

In *Dill* v. *Board of Education*, 47 N. J. Eq., 421 (S. C., 10 L. R. A., 276), it was held that nonuse alone for any length of time will not extinguish an easement created by express grant, and that, to accomplish this result, there must be nonuse, accompanied by "some conduct on the part of the owner of the servient tenement adverse to and defiant of the easement, and the nonuse must be the

result of it. In short, it must amount to an acquiescence of twenty years in the acts of the owner of the servient tenement hostile to and intended to prevent it," and such is the holding of many of the best authorities.

In *Riddle* v. *Heulings*, 38 N. J. Eq., 20, Chancellor Runyon said: "A right of way cannot be released, abandoned, or surrendered by a mere parol agreement. The right in this case is the privilege of the use of a lane or passageway of twelve feet wide. It was granted, in connection with the conveyance of the lot (by the same deed), for use in connection with the lot and for the convenience of the owners thereof. If the fact were that the land or passageway has not been used for the last twenty-seven years, except by express permission from the defendant or his father, it would not bar the complainant from a right to relief. The right in question exists by grant, and nonuse alone will not forfeit or extinguish it."

But nonuser by the dominant owner, united with an adverse use of the servient estate for the period of twenty years, notoriously and clearly inconsistent with the continued existence of the easement, will extinguish it. *Dill* v. *Board of Education, supra; Jamison* v. *Walker*, 11 Gray, 423; *Smith* v. *Langwald*, 140 Mass., 205.

With these legal principles established, we will turn to the facts on which these defendants seek to repel the claim of the complainants.

In 1859 Mr. Hunt erected a large block on his lot. The eastern or rear wall of this block was built up to the western line of the alley. It was, however, left as an open area. On one side of this area, a stairway was built by him to give access to the upper rooms of this building. This, however, did not interfere with its use as a passageway. Underneath he constructed a cellar 108 feet from front to rear, which was extended below and to the eastern margin of the alley, and at the same time he put up a gate at the mouth or Monroe Street entrance to the alley. This building was burned in 1862, and some time afterward there was erected by him upon its site some cheap structures, which ran back 100 feet, having the same open way in the rear, which, as formerly, was closed by a gate erected at the line of Monroe Street. This gate stood there for some time, when, according to Mrs. Hunt's testimony, it was taken down, and the inclosure was boarded up entirely. This condition existed until 1866, as stated by this witness, when, upon the solicitation of one Mrs. Valentine, whose husband, she says, occupied the lower part of the Robinson house as a store, the latter was permitted to put a door at the entrance from Monroe Street, upon the condition that he should keep it locked, and use the area alone for the benefit of his friends and business. She further states that her husband soon became dissatisfied with this arrangement, and he again closed up this entrance, and it so remained

until the year 1873, when, upon a contract with herself as the owner of the property, Mr. Luerhman, who occupied a house on the eastern side of the alley, placed a gate at the entrance, and, for the use of the alley, paid a nominal rent. In 1882 Mrs. Hunt leased to Luerhman $49\frac{1}{2}$ by 100 feet of her ·property, and he erected a one-story building upon it. This lease did not include the alley, as Mrs. Hunt says she desired that left open for light and air, but the north wall of the building extended across the alley, having, however, an opening or doorway into this area. In 1887 Mrs. Hunt gave Luerhman a new lease, covering a period of ten years from that date, and then he erected, upon the walls of his original structure, four more stories, the second story extending over this area, but leaving it open beneath. In this area he erected a stairway for the use of his building, and at its entrance, as before, a gate or door for access to and egress from it. In 1893 this building was destroyed by fire, when the property was improved by Mrs. Hunt and Mrs. Phelan, and leased to their co-defendant, Loeb. After getting possession he erected a solid brick wall across the alley, and thus cut off complainants from all that part of it .in the rear of the Hunt and Phelan tenement. It is this wall that has occasioned the present controversy.

It is clear that neither the extension of the Hunt cellar underneath this alley nor the construction of the rooms above it possess any significance, so far

as the issue here presented is concerned, for neither of these improvements interfered with the easement of passage from the Robinson house to Monroe Street. And we think the defendants attach undue importance to the gates and doors, which were put up and maintained, according to Mrs. Hunt, during the greater part of the time by Col. Hunt and his privies in estate at the entrance to this alley. For even if it be true that these parties by these acts intended to assert an independent and exclusive right to the alley, yet it does not follow, as a matter of law, that the easement therein of complainants, and those from whom they claim, would be affected thereby. Nor does it any the more follow that an assertion of control, as against Luerhman or any other stranger in interest, would impair it. Such a result would only be consequent upon an adverse, exclusive claim set up in connection with these obstructions, of which the owners of the easement had notice. These gates and doors might have stood for an indefinite time, and the defendants might have asserted to others their exclusive claim, yet if they did not make it known to those entitled to the easement as an appurtenant to their estate, by debarring them from its enjoyment or otherwise asserting such adverse right, they would not be affected by it. The mere maintenance of these gates and doors was not inconsistent with the rights of these parties. They might well assume that they were erected to prevent intrusion into the alley and in

the interest of all, to secure it from the commission of nuisances ' by outsiders. As was said by Chief Justice Gibson, in *Nitzell* v. *Paschall*, 3 Rawle, 76, in such a case there must be a denial of the title, or other act on the adverse part, to quicken the owner in the assertion of his right.

In *Welsh* v. *Taylor*, New York Court of Appeals, 18 L. R. A., 535, the same contention was made as to the effect of the erection of a gate by one owner of an easement of way through an alley upon the right of another entitled to a like easement through the same alley. The Court then said: "The fact of the existence of a gate is of no importance in the case as evidence of abandonment, in the absence of evidence that it was used to exclude the owner of the adjoining property. It is not denied that no use was made of the alley by the owner of 143, and as long as there was no occasion on their part to use it, the mere existence of a gate was not notice of any adverse claim on the part of their co-tenants. Nor would acquiescence in its existence be prejudicial to their rights unless an adverse claim was brought to their knowledge. So long as it did not hinder, obstruct or annoy others legally privileged to pass through the same, it was not in violation of the terms upon which the easement was granted."

Another case asserting the same view is that of *Barnes* v. *Lloyd*, 112 Mass., 224. There the defendant claimed a right of way over the plaintiff's

Boyd v. Hunt.

land, each having title to his property from the same party, who, in his deed to the grantee of defendant had expressly granted a right of way over the lot which, through subsequent conveyances, passed to the plaintiff. All the conveyances of the plaintiff's lot down to 1859 had in them this reservation. For a term of seventy years from the grant of the easement and for a period of twenty years "from its last recognition by the owner of the servient tenement, no use whatever of the right of way had been made by the successive owners of the defendant's lot, and plaintiff's lot had always been kept fenced, both on its road side and on the line with defendant's lot, and also across the middle by fences, without any gateway or barway or other opening, and the lot itself had been continuously cultivated. The jury found, nevertheless, that there had not been such adverse use as to extinguish the easement, and the Court held that mere nonuser, under the circumstances, did not extinguish it."

Authorities to like effect could easily be multiplied, but it is sufficient for our purpose to refer to only one more—that of *Railroad* v. *French*, 100 Tenn., 209—where the principle underlying these cases was applied for the preservation of the charter easement for right of way of a railroad over one hundred feet on each side of the center of the track, as against a party claiming under a deed to the fee and actual occupancy for over seven years by his vendor of an original tract of which this lot formed a part.

Turning to the record, we think the evidence is overwhelming that there was no abandonment by the complainants, or of those through whom they claim, of this right of way, nor adverse holding so as to extinguish it.

What was the extent of the authority over this alley exercised by Mr. Hunt from 1859, when he took his deed for it from Greenlaw, until his death in 1872, only appears from the testimony of Mrs. Hunt, and while she stated that during that period of time Mr. Hunt, for himself and her, asserted through the visible evidences of gates, etc., an exclusive claim to this alley, yet it is manifest this statement is of little value, in view of her admission that up to her husband's death she had not looked after anything connected "with the holding, improvments, or renting out of the property," or "its management." In fact, the testimony of Mr. Jones, a property owner in the immediate vicinity of this alley, would rather repel the suggestion that Mr. Hunt acquired title to it in order to set up a claim against the parties interested in common with himself in this easement. This witness says he was present on one occasion when Col. Hunt was complaining to Greenlaw about the nuisances the tenants across the alley from him were constantly committing on it, and that Greenlaw then proposed to convey it to him, to better protect himself against said offenders, and that he did then execute the deed of 1859. We think it fairly inferable from this that

this was his sole purpose in taking this deed and in the erection and maintenance of the gate at the entrance of the alley.

It is true Mrs. Hunt says that while one Valentine occupied the Robinson property as a business house, she, at the solicitation of Mrs. Valentine, obtained her husband's permission for the Valentines to use this alley. In this she is corroborated by one Emma Chalmers, a colored nurse. Both these witnesses place this circumstance in 1866. They were certainly mistaken at least as to the year of its occurrence, as Mrs. Valentine fixes her marriage in 1869, and she denies the occurrence altogether, and says, with great positiveness, that from her marriage she and her husband occupied this property for living and business purposes until his death, in 1879, and during this period without let or hindrance, as well as without permission, from the Hunts, continually using the alley for themselves, their employes, and also in passing their merchandise. From 1873 until 1893, when the Robinson house was burned by the same fire which consumed the Luerhman structure, the evidence is practically without contradiction that the tenants of the Robinson building made daily use of this alley as a matter of right, and without molestation from or submission to these defendants.

But it is insisted that John B. Robinson, at one time an owner of the lot now the property of the complainants, extended a wall on a line with the

north wall of his building, across this alley, and thus clearly indicated his purpose to abandon all right of easement in the remainder. In the first place, Mr. Robinson parted with his interest in this property in 1859, by a deed conveying it to his wife for life, and at her death to such of her children as then survived her. It is evident that this wall was built long after that year, and when he was managing it for minor remaindermen, whose interest he could not prejudice by any such personal action. But an equally conclusive answer to this insistence is that he constructed a door in this wall, which gave him and the occupants of the building easy access to and from the passageway to Monroe Street.

We have examined the case of *Monaghan* v. *Memphis Fair Co.*, 11 Pickle, 108, and we find that it has no bearing on this controversy.

After a careful consideration of the whole record, we are entirely satisfied that the easement of right of way through this alley, appurtenant to the lot of the complainants, has neither been abandoned nor lost by reason of adverse holding, and the obstructions placed in it by defendant, Loeb, with the consent of his co-defendants, are unwarranted.

The decree of the Chancellor, therefore, will be reversed and a decree will be entered here for the abatement of this obstruction, and perpetually enjoining the defendants from interfering with the use by complainants and their tenants of this alley.