(No. 26596.—

THE CLEVELAND, CINCINNATI, CHICAGO AND ST. LOUIS
RAILWAY COMPANY *et al.,* Appellants, *vs.* CENTRAL ILLI-
NOIS PUBLIC SERVICE COMPANY, Appellee.

*Opinion filed May 13, 1942—Rehearing denied Sept. 17, 1942.*

P. J. KOLB, WALTER F. KOLB, McCARTY & ARNOLD,
and GEORGE C. HEATH, (S. W. BAXTER, and C. P. STEWART,
of counsel,) for appellants.

STEVENS & HERNDON, and EAGLETON & EAGLETON, for
appellee.

Mr. CHIEF JUSTICE MURPHY delivered the opinion of the court:

This is an appeal from a decree entered in the circuit court of Crawford county dismissing plaintiffs' complaint for want of equity. The question presented involves the right of defendant, Central Illinois Public Service Company, a public utility engaged in generating, transmitting and furnishing electrical energy to the public, to extend its transmission lines over and across the railroad right of way of the plaintiffs without first having obtained their consent or the authority conferred by a condemnation proceeding. The grounds for reversal are based on two theories, one that plaintiffs owned the right of way in fee, the other that if they do not hold it in fee it is a perpetual easement with certain rights attached, which entitles them to injunctional relief against the alleged trespasses of defendant. On this appeal it makes no difference on the jurisdictional question which theory is adopted for a freehold is involved in either event and this supports a direct appeal to this court. That the existence or non-existence of a perpetual easement involves a freehold see *Wessels* v. *Colebank,* 174 Ill. 618, *Funston* v. *Hoffman,* 232 id. 360.

No question is raised which necessitates a detailed statement of the contents of the pleading. The most of the facts were stipulated. It appears that on January 13, 1872, Jonathan K. Musgrave, who was then the owner in fee of 50 acres of land on which plaintiffs' right of way is now located, conveyed to The Paris and Danville Railroad Company as follows: "In consideration of the advantages of the construction of a railroad from Danville, Illinois, to a point at or near Vincennes, Indiana, and the sum of One Dollar * * * we hereby grant, bargain, sell and release the right of way for said railroad to The Paris and Danville Rail Road Company and their assigns, Eighty feet in width through and over the following described land. * * * And we hereby authorize said company, or their

assigns to enter upon said land and construct said road, and use said right of way during the existence of said company, or their assigns, or the continuance of said road, by whomsoever owned or controlled." The plaintiff, The Cleveland, Cincinnati, Chicago and St. Louis Railway Company, is the present holder of the title conveyed by the Musgrave deed and the other plaintiff, The New York Central Railroad Company, is its lessee. For convenience both companies will be referred to as plaintiffs and as having equal interests in the right of way.

After the conveyance, the grantee or its successors entered upon the right of way strip and constructed railroad tracks thereon. At the present time the improvements on the right of way at the point in question consist of a single track located near the center of the right of way, a switch-track on one side and a telegraph line on the other. The surface of the roadbed is approximately the same level as the surface of the adjoining land. The plaintiff-lessee operates passenger and freight trains propelled by steam over its tracks and uses the switch-track in connection with its railroad business.

Subsequent to the Musgrave conveyance to the Paris railroad, Estella M. Westcott and George R. Westcott, her husband, by a series of *mesne* conveyances became the owners of all the title and interest in the fifty (50) acres owned by Musgrave, except the interest previously conveyed to The Paris and Danville Railroad Company. On the first day of August, 1939, the Westcotts executed and delivered to defendant a grant which gave defendant the right to erect an electric transmission line across the fifty (50) acres, the same to be "subject to the easement of The Cleveland, Cincinnati, Chicago and St. Louis Railway Company." The instrument contained the further provision "this grant is limited to the placing of one tower adjacent to the west line of the right of way of The Cleveland, Cincinnati, Chicago and St. Louis Railway Company and the

right to overhang with wires the property along and adjacent to the line above mentioned."

Plaintiffs, by their original complaint, sought to enjoin defendant from a threatened construction of the line. During the pendency of the proceeding, the agents of the respective parties negotiated relative to extending the line across the right of way. It appears that following the negotiations, defendant constructed its line across the right of way after which plaintiffs amended their complaint and asked for a mandatory injunction commanding defendant to remove the line. From the stipulation, it appears that it was agreed that the negotiations and the erection of the line during the pendency of the proceedings should not prejudice the rights of either party.

The facts are fully set forth showing the method defendant adopted in the construction of the line across the right of way, the present condition of the line and both the present and future use to be made of it by the defendant. At present there are four wires which overhang the right of way. They cross the right of way at or near a right angle and are the only parts of the transmission line within the vertical boundaries of the right of way. The clearance of the wires above the tracks is more than that prescribed by the Illinois Commerce Commission as a minimum. At the point of crossing plaintiffs' right of way, the wires are supported on steel towers 308 feet apart. Prior to the construction of the line the defendant obtained from the Illinois Commerce Commission a certificate of necessity and convenience. It is stipulated that the transmission line and its maintenance will be in accord with the statute and the orders and rules prescribed by the Commerce Commission. There is no claim that the construction of the line or defendant's present or future use will in any way interfere with the operation of plaintiffs' trains over the right of way.

Plaintiffs' first contention is that the right of way is held in fee simple. In the form of an alternative it is urged

that even though they do not hold the fee simple title, they have an easement with such incidental rights that they may enjoin the maintenance of the line over the right of way.

In support of the contention that the Musgrave deed conveyed a fee simple title to The Paris and Danville Railroad company, plaintiffs claim that the special act of the legislature chartering the company constitutes a specific direction as to the character of title the railroad company could take in acquiring its right of way. The act, approved March 26, 1869, (Private Laws, Vol 3, p. 144,) authorized the organization of the corporation and the acquisition of a right of way by agreement or by condemnation prosecuted under the general laws. Section 12 of the special act provided "The right of way and the real estate purchased for the same * * * by mutual agreement or otherwise * * * shall, upon payment * * * become the property of the company, in fee simple." The general condemnation laws in force prior to the adoption of the constitution in 1870 provided that a railroad company in acquiring title for a right of way should take it in fee simple. Neither the general law nor the provision of the special statute referred to can be given the effect of prohibiting the company from acquiring right-of-way easements by agreement. The power to acquire the greater estate would include the power to acquire by purchase the lesser estate.

Defendant calls attention to the fact that the Musgrave deed was executed subsequent to the adoption of the Constitution of 1870 and argue that the provision of section 13 of article 2, which provides "the fee of land taken for railroad tracks, without the consent of the owners thereof, shall remain in such owners, subject to the use for which it is taken" controls. It has never been considered that the provision of the present constitution was a limitation upon the power of a railroad company to acquire by purchase a right of way in fee simple. The constitutional provision was applicable only to condemnation proceedings. It is our con-

clusion that the terms of the Musgrave deed control without reference to section 12 of the special act of 1869 or of section 13 of article 2 of the constitution of 1870.

Whether an instrument conveyed a fee simple title to a railroad right of way or an easement has been before this court in several cases, some of which are *Illinois Central Railroad Co.* v. *Houghton,* 126 Ill. 233; *Walker* v. *Illinois Central Railroad Co.* 215 id. 610; *Branch* v. *Central Trust Company,* 320 id. 432. The most recent is *Tallman* v. *Eastern Illinois and Peoria Railroad Co.* 379 Ill. 441. The wording of the deed of conveyance in that case and the one in the instant case are so alike that what was said in construing the deed in the *Tallman case* is applicable to the one under consideration. The opinion in that case was adopted after the briefs in this case had been filed. Many of the cases cited and relied upon in the briefs are considered and discussed in the *Tallman case* and it is unnecessary to reconsider them. The plaintiffs' interest in the strip in question is that of a right-of-way easement.

Plaintiffs contend that even though their interest does not rise to the dignity of a fee simple title, they, nevertheless, have an interest which has the attributes of such a title. They refer to the fact that the interest in the easement is in perpetuity for the purposes of a right of way, and that they have the exclusive use and possession of the right of way. The duration of the easement or the right to its exclusive possession are matters which refer to the nature and character of the enjoyment of the easement. Even though they may be matters which are common to a fee simple title, they can not for that reason alone be held as extending the dimensions of the space within which the rights incident to the easement may be exercised.

The Musgrave deed fixed the width of the right of way at eighty feet and all the rights incident to the easement had to be exercised within that space. The deed is silent as to the distance above the surface of the earth within

which the grantee could exercise its rights. Under such circumstance the deed must be given a reasonable construction. It must be in accord with what the parties had in mind when the deed was made. It can not be too restricted or it would prevent the practical operation of the trains, nor could it be unlimited as to distance above the surface of the' earth, for then it would grant to the railroad company the right of control in a space which would be beyond that required for right-of-way purposes. The height to which the easement extends where no dimensions are fixed by the instrument creating it depends upon the facts of each case. The height must be sufficient to permit the holder of the dominant estate to exercise all rights incident to the easement. As applied to the operation of trains upon a right of way, the clearance space must extend to a height which will assure safe and convenient passage for all trains. 51 C. J. p. 530, sec. 193; *Citizens Telephone Co. v. Cincinnati, N. O. & T. P. R. Co.* 192 Ky. 399, 233 S. W. 901.

The case of *Eldorado, Marion and Southwestern Railroad Co. v. Sims,* 228 Ill. 9, was a proceeding under the Eminent Domain act to acquire a right of way for a railroad. The trial court refused to permit plaintiff to stipulate that it would make no claim to the coal and that the owner of the servient estate should have the right to mine and remove the coal from the right-of-way strip in the usual and customary manner of mining coal and without regard to the railroad to be constructed on the right of way. The court also refused to give an instruction which told the jury that the owner of the land would have the right to run entries and tunnels through said coal underlying the right of way to connect and mine the coal on either side of the right of way the same to be subject to the right of the railroad company to use it for railroad purposes. The refusal of the instruction and denial of the right to stipulate were held to be error. The principle involved in reference to the right of the owner of the servient estate to drive tun-

nels through the coal at a distance below the surface is similar to the question involved in this case and the holding there sustains the conclusion reached here.

Plaintiffs do not claim that the clearance prescribed by the order of the Commerce Commission would not be sufficient to permit of the passage of the trains nor is there any evidence that if the line is kept at its present height it would in any way interfere with the full exercise of plaintiffs' right in the easement. Under such circumstances the grant which the defendant obtained from the Westcotts gives it the right to maintain its electrical transmission lines over plaintiffs' right of way so long as they do not interfere with appellants' easement.

For the reasons assigned the decree of the circuit court is affirmed.

*Decree affirmed.*