[No. 35407. *En Banc.* January 12, 1962.]

BERNARD THOMPSON *et al.*, *Respondents*, v. GAIL G. SMITH, *Appellant.*\*

\*Reported in 367 P. (2d) 798.

 

*James Munro*, for appellant.

*Elliott, Lee, Carney & Thomas*, for respondents.

HILL, J.—This case was originally heard in Department One, and an opinion was filed November 9, 1960, which was reported in 157 Wash. Dec. 179. On rehearing, while we adhere to some of the views expressed in the departmental opinion, we have arrived at substantially different conclusions.

The following sketch will serve to clarify the issues, with which we are here concerned, which involve the status of three distinct strips of land across a government subdivision (Government Lot 7, Section 34, Township 26 North, Range 2 East W.M.): (a) an eight-foot strip shown as the "Existing Road—Graded in 1938"; (b) two ten-foot reserved strips, one on the north side of the east-west property line, and the other on the south side; and (c) a strip between (a) and (b) which varies from four to seven feet in width. (The sketch shows only a portion of Government Lot 7. Hidden Cove is to the south of the property shown. The sketch is not accurate in that the county road runs the entire length of the west line of the property shown. Also, as will be hereinafter shown, there is no evidence of any reserved strip along the south line of the Christonson property, except the westerly 6.92 feet thereof.)

THE RESERVED STRIPS:

We will first consider (b), the ten-foot-reserved strips on either side of the east-west property line. We are advised that in 1919 the owner of Government Lot 7 was William Pitt Trimble and wife, and that the Trimbles were the common grantors of all property shown on the sketch. While we are assured that it was their purpose to reserve

a ten-foot strip on either side of the east-west property line shown on the sketch for road purposes, we have actually only two conveyances from the Trimbles in the record before us. They relate (1) to what is designated as the Gail Smith property (and the west 6.92 feet of the Christonson property) on the north side of the east-west property line. This deed conveyed the north 320 feet of the west 336.92 feet of Government Lot 7, and was

" . . . subject to right of way for county roads along the north and west sides thereof, also ten feet along the south side to be reserved for road purposes,"

and (2) the Thompson and Enquist properties on the south side of the east-west line; and in that deed, immediately after the description, we find:

" . . . Ten feet off of the north side of the above described tract of land to be used for road purposes."

Other reservations come into the record now before us in the following manner:

On the north side of the east-west property line, the first Trimble deed (to which we have referred) covered the north 320 feet of the west 336.92 feet of Government Lot 7. In 1952, Gail Smith and wife acquired the north 320 feet of the west 660 feet of Government Lot 7 "Except roads." What, if any reservation, there was relating to the east 323.08 feet of this tract is not shown in this record, other than the "Except roads." When the Smiths were divorced, Gail Smith received the west half (330 feet) and his wife the east half (330 feet). The east half is here designated as the Christonson property and, except for the westerly 6.92 feet (included in the original Trimble grant of 336.92 feet), there is nothing in this record to indicate a reservation of a ten-foot strip north of the east-west property line, so far as the Christonson property is concerned.

On the south side of the east-west property line, taking the properties from west to east, the evidence as to reservations is: (a) Seavey property. No deeds in evidence; Seavey testified that he bought his property in 1931 and that there is a reservation across the "back" of his property

of a ten-foot right of way; (b) Thompson and Enquist property. Title comes through the second of the Trimble deeds (above referred to), which described a tract 160.96 feet in width (east-west) and contains the following: "Ten feet off of the north side of the above described tract of land to be used for road purposes." (c) Jacobson property. No conveyance from Trimbles shown. Jacobson secured title in 1931 through a deed from the Waterfront Development Company, which contained the following reservation: "A strip of land ten feet wide along the north end of this tract is reserved as a public road." (This is the only reference to a public road in any of the reservations, at least so far as the evidence in this case goes.) This tract was 160.96 feet in width (east-west).

No other property is shown on the sketch, but there was a property owner still further east (Mrs. Anna Erickson) who testified that, as she understood it, there was a reservation over the north-ten feet of her property for road purposes.

There is no contention that these reserved strips have ever been opened or used for road purposes, except as the Thompsons have gone across them, as shown on the sketch, to connect their property with the existing road lying north of the reserved strips. There is some evidence that the Enquists have, or are intending to open, an approach to the existing road across the reserved strips. The reserved area easement is overgrown with brush and small trees. No other use has been made of it, except as hereinafter described.

THE EXISTING EIGHT-FOOT ROAD:

We turn now to a consideration of (a), the existing road. In 1938, several of the then owners of tracts shown on the sketch induced Kitsap County to use one of its bulldozers (for about five hours) to grade an eight-foot road. For some reason, not apparent from the record, the road was not located within the twenty-foot easement for road purposes, but was, in fact, entirely north of it—there being a distance of from four to seven feet between the south line

of the existing road and the north line of the easement. At least some of the property owners served by it have gravelled it and worked on it.

THE STRIP BETWEEN THE EXISTING EIGHT-FOOT ROAD AND THE RESERVED STRIPS:

Neither by grant nor by adverse use has the defendant Gail Smith, or his predecessors in interest, lost title to this property, nor has anyone acquired an easement over it except, possibly, as an access to the existing road.

THE PRESENT CONTROVERSY:

In February, 1959, Gail Smith triggered the present litigation by constructing a twelve by twenty-four foot concrete slab, located (as shown by the sketch) south of the existing eight-foot road and entirely on property to which Smith has title. A major portion of the slab is within the south-ten feet of his property, which is subject to a reservation for road purposes, and a smaller portion is outside of the ten-foot easement and between the easement and the existing road. It is level with the ground at one end and three feet above the ground level at its highest point. Smith parks cars on the slab and has placed lumber and other articles on it.

The plaintiffs, owning the tracts designated as the Thompson, Enquist, and Jacobson properties, allege that Smith has interfered with and damaged the existing road; that the concrete slab interfered with the use of the existing road; is an obstruction within the area reserved for a road, and is a nuisance; they alleged further that he was intending to build a garage on the concrete slab. They asked that Smith be enjoined from any further construction, and that he be directed to remove the slab and to restore the roadway to its former condition.

From a judgment favorable to the contentions of the plaintiffs, this appeal is taken.

We shall consider *seriatim* the numbered paragraphs of the decretal portion of the judgment and decree appealed from.

The trial court ordered, adjudged and decreed: (1)

that the twenty-foot easement, consisting of the south-ten feet of the north 320 feet of the west 660 feet of Government Lot 7 and the

" . . . adjoining ten feet of land immediately to the south thereof . . . [has] been accepted as, and is now hereby declared to be, a public road, for the use and benefit of all of the owners abutting upon said easement way, and for their successors in interest and the general public; . . ."

The judgment recited that the twenty-foot easement is based on reservations from William P. Trimble and his wife.

In the first place, the judgment takes in too much territory. The easement, as described by the trial court, extends 660 feet along the east-west property line shown in the sketch. The ten-foot easement north of the line is established only over the westerly 336.92 feet and is not established as to the remaining 323.08 feet of the 660 feet; moreover, the owners of the east half of the 660 feet north of the east-west property line were not parties and did not testify. The situation south of the east-west property line is covered by a marginal note[1].

■ Secondly, the courts cannot, by fiat, create public roads where none exist. Whether the state or the county could avail themselves of these reservations for road purposes, we do not need to decide. Conceding the right of the property owners along the east-west property line to open a twenty-foot roadway, utilizing the reserved ten-foot strips for that purpose, they are not here requesting that it be done. The property owners are not here endeavoring to open a road, but to remove an alleged obstruction from a ten-foot strip reserved for road purposes.

---

[1] The only deed in evidence from the Trimbles, south of the east-west property line, conveyed 160.96 feet of the 660 feet measured along that line (the Thompson and Enquist properties). We will assume, however, that the deed to the Jacobson property from the Waterfront Development Company, and the somewhat indefinite testimony of Charles L. Seavey and Mrs. Erickson, established the ten-foot easement immediately south of the east-west property line for the entire 660 feet.

Numbered paragraph (1) of the decretal portion of the judgment and decree should be stricken.

By paragraph (2) of the decretal portion of its judgment and decree the court held that:

" . . . the eight feet wide graveled roadway lying and existing a few feet immediately to the north of said twenty foot easement way, together with the land intervening between the two, has become, and now is, by prescriptive use of said owners and the general public, a public road."

Attention is again directed to the fact that, as the sketch shows, the eight-foot roadway extends across the Christonson property, the owners of which are not before the court. As heretofore pointed out, there is no evidence establishing an easement across anything other than the westerly 6.92 feet of their land.

■ Limiting the trial court's holding to the portion of the established roadway across the Gail Smith property, we would agree that the right to the use of that road by all of the plaintiffs and other property owners who testified, had been established—whether by prescription or by agreement (express or implied)—and that Smith could be enjoined from obstructing it. It is concededly not a county road; there is no evidence that this road has ever been worked or kept up at public expense. The only evidence of any public money or labor having been spent upon it was that a Kitsap County bulldozer was used for some five hours in 1938, in the original laying out of this road, which falls far short of making it a public road. *Stevens Cy. v. Burrus* (1935), 180 Wash. 420, 40 P. (2d) 125. It terminates on the property of the witness Mrs. Anna Erickson and is a dead-end road, which no member of the public has occasion to use, except to go to or from the home of one or the other of the property owners who use it. To allow the declaration of a public road to stand would deprive the abutting property owners of their right to prohibit the indiscriminate public use of their easement over the eight-foot road as established by their use thereof.

Illustrations of the disadvantages of a making of a private

easement a public way are referred to in *Roediger v. Cullen* (1946), 26 Wn. (2d) 690, 175 P. (2d) 669.

In the face of a much stronger showing of public use, we held in *Rodruck v. Sand Point Maintenance Comm.* (1956), 48 Wn. (2d) 565, 571, 295 P. (2d) 714, that the streets in a residential district known as the Sand Point Country Club remained private ways. We pointed out that one could not drive through the district and get out on the other side.

" . . . A member of the public must enter from 75th street, and, to get out, must go back to 75th street. It is difficult under such circumstances to believe that any outsider had any idea that he was using these streets as a matter of right."

The foregoing statement is applicable to the present situation.

The distinction between the Rodruck and such prescriptive public road cases as *Gray v. McDonald* (1955), 46 Wn. (2d) 574, 283 P. (2d) 135; *Gray v. McDonald* (1958), 52 Wn. (2d) 822, 329 P. (2d) 478; and *King Cy. v. Hagen* (1948), 30 Wn. (2d) 847, 194 P. (2d) 357, is that in the latter the public had used for the prescriptive period the road or way to get some place other than the property of those who had a right to the use of the road as a private way.

In addition to making the eight-foot-private road a public road, this paragraph (2) of the decree purports to make the strip we have designated (c), which lies between (b) the easement and (a) the established road, part of a public road by prescriptive use. The west 330 feet of this strip belongs to Smith and is the only portion that could be affected by the judgment. There is no evidence that anybody, much less the public, has acquired either by prescription or by agreement any right to use this strip as a road. (We are not concerned here with the rights which any of the property owners south of the east-west property line may have acquired to cross this strip to reach the established road.)

Numbered paragraph (2) of the decretal portion of the judgment and decree should eliminate all reference to the land between the established road and the easement and

do no more than decree, as we have indicated, that the plaintiffs have a right to use the established eight-foot road over and across Gail Smith's property free from any obstruction thereof or interference therewith.

By numbered paragraph (3) of the decretal portion of the judgment and decree, the court held that Smith, by his concrete slab, "interfered and hindered the use of said roadway and easement for travel purposes"; and he was ordered to remove it.

The evidence does not support the judgment. The evidence was that the concrete slab did not interfere with the use of the eight-foot traveled road at this time, but would if it were to be widened. Whatever may be the proceeding to widen an eight-foot easement acquired by prescription or agreement, the removal of the concrete slab will have to await that event.

As to the portion of the slab lying outside of the south-ten feet of Smith's property "reserved for road purposes," there is, in our opinion, no basis for the trial court's order. The record is barren of any evidence which would indicate that Smith had been divested, by prescription or otherwise, of title to that portion of the property (occupied by the slab) lying north of the south-ten feet reserved for road purposes.

As to the portion of the slab lying within the ten feet "reserved for road purposes," our view is that Smith is entitled to make use of the property until it is used for the purpose reserved. We agree with the conclusion reached in *Netherlands American Mortgage Bank v. Eastern R. & Lbr. Co.* (1927), 142 Wash. 204, 252 Pac. 916, that: Mere nonuse, for no matter how long a period, would not extinguish the easement. However, it is also the law that the owner of the property has the right to use his land for purposes not inconsistent with its ultimate use for the reserved purpose during the period of nonuse. The rule is that where a right of way is established by reservation, the land remains the property of the owner of the servient estate and he is entitled to use it for any purpose that does

not interfere with the proper enjoyment of the easement. *Kurz v. Blume* (1950), 407 Ill. 383, 95 N. E. (2d) 338; 25 A. L .R. (2d) 1258; *Cleveland, Cincinnati, Chicago & St. Louis R. Co. v. Central Illinois Public Service Co.* (1942), 380 Ill. 130, 43 N. E. (2d) 993; *New York Central R. Co. v. Yarian* (1942), 219 Ind. 477, 39 N. E. (2d) 604, 139 A. L. R. 455; *Greenwalt v. McCardell* (1940), 178 Md. 132, 12 A. (2d) 522, 523; *Gibbons v. Ebding* (1904), 70 Ohio St. 298, 71 N. E. 720, 721, 101 Am. St. Rep. 900, 922; *Weed v. McKeg* (1903), 79 App. Div. 218, 79 N. Y. S. 807; *Boyd v. Hunt* (1899), 102 Tenn. 495, 52 S. W. 131; Jones on Easements, c. XI, § 414, p. 328; Washburn's Easements & Servitudes (4th ed.) c. II, § 1, p. 292.

█ Ordinarily, what may be considered a proper use by the owner of the fee is a question of fact and depends largely on the extent and mode of use of the particular easement. *Pasadena v. California-Michigan Land & Water Co.* (1941), 17 Cal. (2d) 576, 110 P. (2d) 983, 133 A. L. R. 1186; *Colegrove Water Co. v. Hollywood* (1907), 151 Cal. 425, 90 Pac. 1053, 13 L. R. A. (N. S.) 904.

In the latter case, the owner of the land sought to make use of the servient tenement for laying water pipes, despite the fact that an easement for highway purposes had already been granted to the defendant municipality. The court permitted this, after a finding that the water pipes would not interfere with the use then being made of the highway easement by the city, and then said (p. 429):

" . . . but the municipality may, and frequently does, occupy the soil beneath the surface for the accommodation of sewers, gas and water pipes, electric wires, and conduits for railroads. Where the city undertakes to occupy the space above or below the surface of the street for any purpose within the scope of the public uses to which highways may be put, the use by the owner of the fee must yield to the public use. . . ."

In the *Pasadena* case the court, after using the above quotation, added (p. 583):

" . . . The respective rights of the two parties [the city possessing the easement, and the owner of the fee sub-

ject to the easement] are not absolute, but must be construed to permit a due and reasonable enjoyment of both interests so long as that is possible. . . ."

■ There is no evidence that the south-ten feet of Smith's property has ever been used for a road, and no evidence that it will be used as such in the immediate future. It would not be proper at this time to prevent Smith's use of a concrete slab for parking an automobile or other appropriate use, until such time as the ten-foot strip may be required for road purposes. As said in *Bakeman v. Talbot* (1865), 31 N. Y. 366, 88 Am. Dec. 275,

" . . . There is nothing inconsistent [with the reserved easement] in holding that the present arrangements are suitable and sufficient under existing circumstances; . . . ."

It would appear from the record that Smith, by his conduct, has made himself obnoxious to his neighbors; but that is no justification for depriving him of the present use of the south-ten feet of his property until it is required for road purposes, or of any of his property north thereof in which the plaintiffs have acquired no rights by prescription or agreement.

In fact, when and if a roadway is opened over the strips reserved for that purpose, it may be that the grade will be such that the slab will need only to be covered over; but, if and when such a roadway is put in, the slab, if it is an interference, would have to be removed.

■ However, we do not believe that a structure that could not be removed without substantial cost should be permitted in such an easement, unless there is some guarantee that it will be removed if necessary. In some cities it is a common practice to permit adjoining property owners to extend rockeries and other improvements into the streets, as platted, on putting up a bond to secure their removal when the city desires to use the entire street. The court might well require such an arrangement as a condition on which the portion of the concrete slab within the easement area might be permitted to remain.

Numbered paragraph (4) of the decretal provision of the judgment and decree is a judgment against Smith for one hundred dollars, unless he shall remove the concrete slab by a certain day. Since we have held that there is no necessity for the present removal of the slab, numbered paragraphs (3) and (4) of the decretal portion of the judgment and decree should be stricken.

Paragraph (5) was a judgment for costs against Smith, and it will not be disturbed, as his conduct has made a clarification of the rights of the parties in the three strips necessary.

The only relief to which the plaintiffs were entitled at the time of trial was a determination that they have a right, by prescription or agreement, to their present means of access by the eight-foot traveled road, and the right to the use of that road at all times and for all purposes relating to the use of their property; that Smith should be required to repair any damage he has done to the surface of that road; that he be enjoined from using the ten-foot strip reserved for a road for any purpose inconsistent with that ultimate use; and that he be directed to remove so much of the concrete slab as is in the ten-foot strip reserved for road purposes, when and if it interferes with the use of that strip for road purposes—giving, in the meantime if the trial court deems it necessary, a suitable guarantee that it will be so removed.

The plaintiffs, in their petition for rehearing and in their brief in support of it, are complaining about other conduct on the part of the defendant Gail Smith subsequent to the decree. It is stated that he has

" . . . placed farm tools and equipment so that they extend out into the traveled portion of the road. He has placed a huge rock also near to the roadway, and since the opinion was rendered by the Department, he has erected immediately alongside of the traveled portion of the roadway posts, which impede the traveled road and make dangers of collision imminent."

While we do not accept these statements as verities, we

do direct that the case be reopened to ascertain what additional relief, if any, is appropriate at the present time.

While we have upheld the legal rights of the defendant Gail Smith to make limited use of the ten-foot strip reserved for road purposes, and to the ownership of his land lying between the easement and the established road, we have also upheld the right of the plaintiffs to the use of the eight-foot graveled road; and those rights, together with the right of their existing access to that road, must be protected; and any attempt to impair or impede its proper use should be severely dealt with.

Remanded for the entry of a new judgment and decree, with the deletions herein indicated, and with such injunctive relief granted to the plaintiffs as is consistent with the views herein expressed. Neither party will recover their costs on this appeal.

FINLEY, C. J., DONWORTH, WEAVER, ROSELLINI, and FOSTER, JJ., concur.

MALLERY, J. (dissenting)—The right to the removal of an obstruction placed in the easement is an issue in this case. We are not here concerned with compatible use of easements. If we were, we should still not be able to hold logically that an obstruction, which prevents use, is a compatible use.

It is true the interest in land conveyed by an easement of any nature is nonexclusive. Other proper persons may use the easement for the purpose for which it was created, and such use is, of course, compatible as a matter of law. Still other uses, which do not interfere with the right created by the easement, may be compatible as a matter of fact, such as the early practice of pasturing stock in easements. But an interference with the purpose of an easement by placing obstructions in it can never be compatible and any use attributed to the obstruction is beside the point. This is for the simple reason that it constitutes a derogation from the grant.

The title to the grantee's interest in an easement is not

defeasible by his nonuse. It is as absolute as a fee-simple title to which it generally pertains. It need not be continuously exercised or at all. The right to a removal of an obstruction placed in an easement is absolute unless lost by adverse possession.

The theory of the majority that the test of an obstruction is purely subjective in that it exists as such only when some one is actually trying to use the easement destroys the grantee's right to have the easement available and salable at all times, whether he uses it or not.

The majority rule is unworkable and without precedent. Any successor of the grantees will not be buying an available easement, only a law suit and a barren one at that, since, if there is a successor to the person creating the obstruction, he will have no personal liability for the damage caused by it.

I dissent.

OTT and HUNTER, JJ., concur with MALLERY, J.