IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| KENNETH A. ADAMS and DEE ADAMS, husband and wife,<br><br>Appellants,<br><br>v.<br><br>EMMETT L. NULPH, a single person and ELN HOLDINGS, LLC, a Washington limited liability company,<br><br>Respondents. | No. 87376-8-I<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION |

CHUNG, J. — Kenneth A. Adams and Dee Adams (collectively the "Adamses") have an access easement crossing Emmett Nulph's property. Since the Adamses and Nulph have owned their respective properties, there has been an approximately 8.5-foot paved driveway on the designated easement. Nulph rezoned the property for his dental office and made various improvements, including repaving the existing paved driveway and adding landscaping and curbing along part of it. The Adamses filed a claim against Nulph alleging trespass of the access easement. The parties filed cross-motions for summary judgment. The Adamses then amended their complaint alleging that Nulph's improvements and landscaping unreasonably encroached and interfered with their access easement by depriving them of using approximately 13 feet of it. The trial court denied the Adamses' motion for summary judgment, granted Nulph's motion for summary judgment, and dismissed the Adamses' claims. As we find no error, we affirm.

FACTS

In 1978, Larry and Betty Luppino (collectively the "Luppinos") and Joseph and Frieda Burckhard (collectively the "Burckhards") recorded an amended short plat that granted and reserved an "easement for access as shown on the face of the short plat" for two residential lots in Yakima, Washington (the City). The Luppinos were the owners of Lot 1, the servient estate, and the Burckhards were the owners of Lot 2, the dominant estate. The plat shows a 22-foot-wide easement that crosses the south side of the Luppinos' property to grant the Burckhards access from S. 72nd Avenue, which runs north-south, to their property, which is located to the east of the Luppinos' lot. The Luppinos and the Burckhards established a shared access driveway within the easement area.

In February 1999, the Burckhards sold Lot 2 to Kenneth Adams by warranty deed subject to the recorded access easement. In October 2003, Kenneth deeded the property to his marital community, consisting of himself and his wife, Dee Adams.

In May 2008, Betty Luppino sold Lot 1 to Emmett Nulph, subject to the access easement. In December 2011, Nulph deeded the property to ELN Holdings, LLC. Sometime in 2009 or 2010, Nulph[1] began the process for developing Lot 1 into a dental clinic. In 2010, Nulph filed an application to rezone from a residential property (R-1) to a business property (B-1), specifically, a professional office. Nulph hired Brockway, Opfer, Raab Architecture (BORArchitecture) to design his dental clinic with the assistance of HLA Engineering and Surveying (HLA). A site plan submitted with the rezoning application identified the existing 22-foot easement and an existing 8.75-foot shared

_____

[1] As Nulph acted on behalf of ELN Holdings, with regard to the actions at issue, we refer to both as Nulph.

2

asphalt access driveway, as well as landscaping in part of the easement space. The City distributed notices of rezoning to all "owners within 500 feet"; no objections were filed. In November 2010, the Yakima Planning Commission recommended approval of Nulph's request to rezone, specifically finding that public utilities such as fire protection and Yakima police were available to the property. Subsequently, the Yakima City Council approved Nulph's application to rezone and his development plan.

Next, HLA prepared a Grading and Site Utility Plan for Nulph's new dental clinic. The City approved the Grading and Site Utility Plan in July 2012. According to Nulph, sometime during the planning phase, he and Kenneth Adams met to discuss re-paving the access driveway. Kenneth acknowledges he agreed to split payment, and Columbia Asphalt & Gravel invoiced Nulph for paving the shared "Nulph/Adams Driveway." In December 2012, the City issued a Certificate of Occupancy to ELN Holdings LLC for the new dental clinic.

In 2017, the Adamses filed a complaint alleging trespass of the easement due to Nulph's improvements, including landscaping and curbing, which "encroach across the entire length of the 22 foot Easement reducing the width of the 22 Foot Easement down to 8.6 feet," and claiming that this encroachment prevents the Adamses from "full use of their driveway access within the legally entitled 22 foot Easement." The Adamses sought removal of the curbing and landscaping as well as damages. Nulph filed an answer in April 2017 and asserted various affirmative defenses, including equitable estoppel and mutual recognition and acquiescence.

The clerk for Yakima County Superior Court issued three Notices of Dismissal for Want of Prosecution in May 2018, February 2020, and again in June 2022, which each

3

required the parties to take an action of record and file a status report explaining why the case was inactive.[2]

In October 2023, Nulph and the Adamses filed cross-motions for summary judgment. Nulph sought dismissal of the Adamses' trespass claim, arguing it was an improper claim under the law and was barred by statute of limitations, laches, mutual agreement and acquiescence, and equitable estoppel. In their motion, the Adamses sought "a court order finding the Defendants' obstructions are infringing, creating nuisance and trespassing on Plaintiff's Easement and must be removed." In response, Nulph stated that his use of his property was reasonable and did not interfere with the purpose of the parties' easement and expressly stated that he was not arguing that the easement be terminated.

Also in October 2023, the Adamses filed a motion to amend their complaint to replace the trespass claim with a "[m]ore descriptive and accurate identification of [the] cause of action" that Nulph's "landscaping and installation of cement curbing constitute unreasonable encroachment and interference with [the Adamses'] express access Easement depriving [them] of over 13 feet of use and enjoyment of the Easement over [Nulph's] property." The court granted the Adamses' motion to amend in December 2023. Then, on September 17, 2024, the trial court denied the Adamses' motion for summary judgment and granted Nulph's motion for summary judgment, dismissing all of the Adamses' claims.

---

[2] Nulph asserts that the Adamses objected to the May 2018 order citing that discovery was ongoing and responded to the February 2020 order stating that his objection was an "action of record." However, there are no documents in the record that indicate such objections or filings. After the notices of dismissal, the only pleading prior to the motions at issue on appeal that is included in the appellate record is the Adamses' Note for Trial Setting and Initial Statement of Arbitrability filed in March 2020.

The Adamses timely appeal.

DISCUSSION

The Adamses challenge the trial court's order granting Nulph's motion for summary judgment and denying their motion for summary judgment.[3]

We review orders granting summary judgment de novo. Keck v. Collins, 184 Wn.2d 358, 370, 357 P.3d 1080 (2015). We consider "the evidence and all reasonable inferences from the evidence in the light most favorable to the nonmoving party." Id. When the parties file cross-motions for summary judgment we look at "the evidence in the light most favorable to the nonmoving party with respect to the particular claim." West v. Wash. Dep't of Fish & Wildlife, 21 Wn. App. 2d 435, 441, 506 P.3d 722 (2022). Summary judgment is appropriate when "there is no genuine issue as to any material fact," meaning the moving party is entitled to judgment as a matter of law. CR 56(c). A "material fact" is one that impacts the outcome of the litigation. Owen v. Burlington N. & Santa Fe R.R. Co., 153 Wn.2d 780, 789, 108 P.3d 1220 (2005). Further, there is a genuine issue of material fact when "the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving party." Keck, 184 Wn.2d at 370.

The party moving for summary judgment has the initial burden of showing the absence of an issue of material fact. Young v. Key Pharm., Inc., 112 Wn.2d 216, 225,

---

[3] Nulph argues that the Adamses did not challenge "the trial court's grant of summary judgment based upon findings that the 1978 Access Easement is a floating easement and that the servient estate owners use of the servient estate did not unreasonably or material interfere with the use of the access easement." But the trial court did not enter such findings of fact. At summary judgment, trial courts do not enter findings of fact because it does not resolve factual disputes. Walker v. Wenatchee Valley Truck & Auto Outlet, Inc., 155 Wn. App. 199, 212, 229 P.3d 871 (2010). Further, if a trial court does enter findings of fact at summary judgment, those findings " 'are superfluous.' " Nelson v. Dep't of Labor & Indus., 198 Wn. App. 101, 109, 392 P.3d 1138 (2017) (quoting Concerned Coupeville Citizens v. Town of Coupeville, 62 Wn. App. 408, 413, 814 P.2d 243 (1991)). Therefore, Nulph's argument that the Adamses did not challenge any findings of fact is unavailing.

770 P.2d 182 (1989). A defendant moving for summary judgment can submit affidavits to demonstrate that no issue of material fact exists or can demonstrate to the trial court that the plaintiff lacks competent evidence to support an essential element of their case. Id. at 225-26. When the defendant-movant satisfies their initial burden, the burden then shifts to the plaintiff. Id. at 225. The plaintiff must sufficiently demonstrate " 'the existence of an element essential to [their] case, and on which [they] will bear the burden of proof at trial.' " Id. (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552, 91 L. Ed. 2d 265 (1986)). The failure to make such showing will result in the trial court granting summary judgment. Id.

On appeal, the appellant must provide argument on the relevant issues. RAP 10.3(a)(6). At the time the Adamses filed their motion for summary judgment, their complaint had not yet been amended. Therefore, their sole claim at that point was for trespass. The Adamses' briefing on appeal provides no argument or authority on the law of trespass or its application to the facts in this case. When a party fails to address issues in its briefing and provide legal authority, it waives the right to appeal that issue. State v. Cox, 109 Wn. App. 937, 943, 38 P.3d 371 (2002). The trial court did not err in denying the Adamses' summary judgment motion on this record.

By contrast, Nulph's motion for summary judgment sought dismissal of the Adamses' claim on several bases, including that Nulph's site development and improvements did not unreasonably interfere with the Adamses' use of the easement and their claims were barred by the statute of limitations, laches, mutual agreement and acquiescence, and equitable estoppel. We may affirm on any basis that is supported by the record. Bavand v. OneWest Bank, 196 Wn. App. 813, 825, 385 P.3d 233 (2016).

The Adamses present alternative arguments that the easement was terminated by Nulph's improvements, extinguished through adverse possession, or abandoned through nonuse or mutual recognition. But we need not reach these arguments, as the Adamses' appellate briefing cites to various cases, but fails to engage with the law, explain how it applies to this case, or provide citations to the record. Moreover, the Adamses' arguments are all directed at whether Nulph's site developments eliminated their easement rights, a claim that Nulph expressly disavows making.[4]

By contrast, the trial court had briefing and declarations from both parties as to whether Nulph's site changes unreasonably interfered with the Adamses' use of the easement. We agree with Nulph that on this record, entry of summary judgment was proper because the Adamses failed to present a question of fact that Nulph's improvements and landscaping unreasonably encroached and interfered with their use and enjoyment of the access easement.

In general, a servient estate owner may use their property in any manner that "does not interfere with the proper enjoyment of the easement." Thompson v. Smith, 59 Wn.2d 397, 407-08, 367 P.2d 798 (1962); see also Zonnebloem, LLC v. Blue Bay Holdings, LLC, 200 Wn. App. 178, 184, 401 P.3d 468 (2017) (servient estate owner may "engage in reasonable conduct that affects access to the easement as long as that conduct does not unreasonably interfere with the easement holder's use"). Reasonable

---

[4] Nulph specifically stated that he was not seeking to terminate the easement, and the trial court did not enter any termination order. As to the Adamses' suggestion that the trial court's grant of summary judgment "would establish the exclusive use, hostility and start the time running for the time element in establishing the necessary elements" of adverse possession, which "effectively extinguish[es] 13'6' " of their easement, Nulph also notes he has never argued that the easement was extinguished by adverse possession and the trial court did not consider this issue at summary judgment. Finally, Nulph points out that he has never argued that there was a mutual recognition between parties acquiescing to reduce any part of the 22-foot easement.

use is a question of fact that is discerned from the "mode of use of the particular easement." Thompson, 59 Wn.2d at 408. The "reasonableness of a restraint depends on a balancing of the necessity of the restraint for the protection of the servient estate against the degree of interference with the easement holder's use." Zonnebloem, 200 Wn. App. at 184.

For example, in Thompson, there was an existing access easement between two properties, which had never been used as a road. 59 Wn.2d at 402. The servient estate owner constructed a road that was completely on their property and not within the easement area. Id. at 400-03. Subsequently, the servient estate owner laid concrete on part of the unused easement. Id. at 403. As there was no evidence that the section of the easement where the concrete was laid had been used as a road, nor were there future plans to use it as a road, the court concluded that the servient owner did not need to remove the slab; however, if a future need to use the easement as a road developed, they would need to remove the slab. Id. at 408-09.

Here, the purpose of the 22-foot easement was to grant the Adamses—as dominant estate owners—access to their property. Nulph contends that his use of the easement was not unreasonable and did not materially interfere with the Adamses' use of the easement because he preserved that access. Moreover, he claims he improved the full width of the existing paved driveway—approximately 8.5 feet—and his other improvements allow for an additional 5.5 feet of space to expand the driveway on the south end.

Indeed, the Nulph/Adams easement is similar to the one in Thompson. There, an established easement was not being used as a road, and here, only an approximately

8

8.5-foot portion of the easement was paved and used to access the Adamses' property. Nulph's developments preserved the portion being used as a paved driveway to access the Adamses' property.

The Adamses submitted a declaration from James C. Bell, a land surveyor, that stated that his survey revealed that Nulph's "concrete barrier and landscaping encroach[ed] on the Easement by approximately 8 [feet]." Other than this conclusory statement, Bell did not explain how this encroachment was unreasonable or interfered with the Adamses' use of the easement to access their property.

Dee Adams claimed in her declaration that Nulph's asphalting and landscaping "dangerously narrows the ingress and egress of the Easement," to approximately 8'6," thereby physically limiting "emergency vehicles such as ambulances and fire trucks" from accessing their property. The Adamses also stated that due to the curbing and landscaping, delivery drivers could not deliver packages and on one occasion an ambulance could not get to the house and Dee had to be carried down the driveway. In particular, they claimed that the driveway was not in compliance with the Fire Apparatus Access Road (FAAR) – checklist, which requires an unobstructed minimum width of 12 feet.

However, Nulph points out that the FAAR checklist for firefighter access applies in unincorporated areas in Yakima County, not to properties within the city limits of Yakima, including the Adams and Nulph properties.[5] Instead, the City has adopted the International Fire Code (IFC).[6] See Yakima Municipal Code 10.05.010 (adopting 2021

---

[5] According to the Yakima County Fire Marshal's Office, FAAR applies to an "access way or easement that provides access to two or more addressable structures or units that is not included in the County Road Network" and requires "a minimum unobstructed width of 12 [feet]."

[6] Int'l Code Council, International Fire Code (2021), https://codes.iccsafe.org/content/IFC2021P2

Washington State Fire Code as maintained in Chapter 51-54A WAC); WAC 51-54A-003 (adopting the 2021 IFC). The Adamses' property complies with the IFC requirement that a building be within 400 feet of a fire hydrant, as it is approximately 356 feet from the farthest point of their property to a fire hydrant.[7] Further, Harlan Peterson, a retired firefighter, attested that the "paved driveway is sufficient in width and construction to allow a fire truck appropriate access to the back property (Adamses' lot)," and that "the curbing does not interfere with access" because the curb was "approximately 8'6" to 8'8" which is sufficient width for a fire truck" and "the road surface is well maintained."[8]

The record also contains evidence from Jacob Grant, a manager for an emergency medical services provider in the City and County of Yakima, who stated that "[a]ccess to the Adams Property is over paved driveway that is sufficient width and construction to allow ambulance access to the back property (Adamses' lot)," and specifically noted that the distance between the curbing was "sufficient for ambulance access." Grant also noted that there were adjacent properties, including a library parking lot that served as "an alternative location for provision of emergency medical and fire services available to the Adams property." Thus, the evidence before the trial court shows that the curbing and landscaping improvements did not unreasonably interfere with the Adamses' use of the access easement because it was wide enough for emergency fire and medical vehicles to enter, per local regulations.

Other evidence that was before the trial court further supports that Nulph's curbing and landscaping does not unreasonably interfere with the Adamses' use of their

---

[7] IFC Section 507.5.1.

[8] Further, Peterson explained that to his knowledge, the County of Yakima adopted the FAAR standard but the City of Yakima (City) had not and was governed instead by City regulations.

access easement. For example, in approving Nulph's application to rezone his lot, the Yakima Planning Commission noted that "[a]ll required public utilities (sewer, water, irrigation, street lighting, and fire hydrants) are presently available on the property." The Planning Commission also noted that rezoning did not "present any adverse consequences for adjacent jurisdictions or service providers." Additionally, Nulph's architect and surveyor both stated that the City Engineer reviewed the Grading & Site Utility Plan, which depicted the easement and the areas to be improved, including re-paving, landscaping, and curbing, for compliance with local regulations and approved the plan.

Finally, Nulph met with Kenneth Adams on several occasions between the start of construction in 2011 and the end of construction in 2012 to discuss re-paving the access driveway. Kenneth stated that he "agreed to pay for half of the cost of asphalting the roadway on [their] Easement," and also paid to asphalt the eastern section of their own property. Kenneth also stated that Nulph asked him to sign "something which [he] understood was an acknowledgment that [he] did not object to [Nulph's] proposed zoning change for [Nulph's] lot and an agreement to share the expense of asphalting" the access roadway on the easement, but that "it was not [his] understanding that [he] was in any way giving up a portion of [his] Easement rights." After paving was complete, Columbia Asphalt & Gravel issued an invoice to Nulph for the shared "Nulph/Adams Driveway." The Adamses' agreement to repave the 8.5-foot section of the easement further supports that Nulph's improvements to that section of the easement were reasonable and did not interfere with their use of the easement.

Viewing the evidence in the summary judgment record in the light most favorable to the Adamses as the nonmoving party, we conclude that there is no genuine issue of material fact as to whether Nulph's use of his property unreasonably interferes with their use of the access driveway. The trial court did not err by granting Nulph's motion for summary judgment dismissing the Adamses' claims.

Affirmed.

_Chung, J._

WE CONCUR:

_Feldman, J._                    Díaz, J.